In the Matter of **ARRINGTON LUMBER, INCORPORATED, Bankrupt.**

**No. 18484.**

United States District Court
E. D. Virginia,
Norfolk Division.

Feb. 1, 1960.

T. L. Sawyer, Norfolk, Va., for O. M. Evans T/A Evans Lumber Co.

Russell T. Bradford, Norfolk, Va., for the Trustee P. B. White.

Francis N. Crenshaw, Norfolk, Va., for Bowling Green Lumber Co.

WALTER E. HOFFMAN, District Judge.

From orders entered by the Referee in Bankruptcy on February 2, 1959, and March 10, 1959, O. M. Evans T/A Evans Lumber Company has filed petitions for review. Bowling Green Lumber Company has likewise sought a review from the order of March 10, 1959.

As to the contention of Bowling Green Lumber Company, the matter can be. briefly stated. The Referee disallowed the claim of this creditor as secured, but included the claim among the general creditors. The sole question for consideration was whether a deed of trust from Arrington Lumber, Inc., to T. L. Sawyer, Trustee, dated July 29, 1958, recorded September 4, 1958, constituted a preference where bankruptcy intervened on October 10, 1958. The issue is purely factual and, while a transcript of the evidence is not available, the summary prepared by the Referee clearly establishes the correctness of his ruling.

The remaining questions are not to be treated so lightly and, for these purposes, a statement of facts appears to be in order. The charter of the bankrupt corporation was issued by the State Corporation Commission of Virginia on January 27, 1956. One W. L. Fentress was duly elected president and treasurer of the corporation and, from the evidence adduced before the Referee, Fentress was the only active officer and director, and handled all of the corporate affairs from its inception to the date of bankruptcy. Two stock issues were subscribed to by Fentress and certificates issued to him, with 799½ shares at $10 each being issued at the time of incorporation and 200 shares at $10 each being issued on or about November 2, 1956. Fentress paid nothing for the stock subscribed and issued and, at the time of bankruptcy, was indebted for same to the extent of $11,995.

At the time of incorporation in 1956, Fentress was the owner of certain improved real estate in the City of Norfolk, which was subject to the lien of a deed of trust securing the Merchants &

Planters Bank in the sum of $12,500. This deed of trust constituted a first lien upon the real estate and its validity or priority is not in dispute. The corporate minutes reveal that Fentress, having subscribed to 799½ shares of stock, agreed to transfer the real estate and certain equipment to the corporation for $12,500, which valuation was determined by the board of directors. Fentress agreed to take $8,000 in common stock, together with a corporate demand note in the sum of $4,500, and further agreed that the corporation could hold his corporate stock and the demand note until he, Fentress, paid the Bank the indebtedness due under the first deed of trust. While the real estate and equipment were in constant use from the commencement of the corporation, the conveyance from Fentress to the corporation was dated November 23, 1956, but not recorded until June 6, 1957. The deed shows on its face that it was subject to the Bank's deed of trust which Fentress agreed to pay. As Fentress has never paid the $12,500 obligation to the Bank, the net result is that he acquired his corporate stock without any payment whatsoever.

By deed of trust dated November 23, 1956, also recorded June 6, 1957, the corporation executed what may, for the purpose of this proceeding, be denominated a "second deed of trust" on the same property, to Charles B. Cross, Trustee, securing two notes; one in favor of and held by Fentress in the sum of $6,735; the other in favor of and held by Dr. J. L. Spencer in the original amount of $5,600. Apparently some payments were made on the Spencer note as, at the time of bankruptcy, the principal had been reduced to $4,600. No attack has been made upon the validity or priority of the Spencer note and, as the compromise hereinafter discussed reduced the Spencer claim to $3,000, plus interest allowed in the sum of $393, it is assumed that this obligation has or will be paid in the order of priority as referred to in the Referee's order of March 10, 1959.

By deed of trust dated April 15, 1958, recorded May 29, 1958, the corporation conveyed to Charles B. Cross, Trustee, the same subject property, which deed of trust for the purposes of this memorandum may be denominated as the "third deed of trust". This conveyance was made to secure a note payable to Evans Lumber Company in the sum of $6,621.43, and was obviously given in payment of an antecedent open account indebtedness. The trust deed was executed and recorded more than four months prior to bankruptcy. The indebtedness is subject to the order of March 10, 1959, with respect to the valuation assigned to the sale of personalty covered under the deed of trust.

The trustee in bankruptcy, pursuant to order of Court, sold the real estate, buildings, and equipment for the aggregate sum of $30,000. All liens were transferred to the proceeds of the sale. The Court has allocated $17,500 to the realty and $12,500 to the personalty. After paying the Bank, there remained a fund of $8,423.52 allocated to the real estate, subject to some increase by the receipt of unearned insurance premiums on the property.

Assuming arguendo the validity of the second deed of trust in favor of Fentress and Spencer, these notes would be next in the order of priority as to the realty fund. The notes secured by this second deed of trust were the subject of a rather unusual compromise order entered on February 2, 1959, from which order Evans Lumber Company seeks this review. Pursuant to § 27 of the Act of Bankruptcy, 11 U.S.C.A. § 50, and the General Orders in Bankruptcy, the parties in interest were convened to consider a proposed compromise between the trustee in bankruptcy and Fentress and Spencer, the latter being the holders of the notes. Over objection of Evans Lumber Company, the Referee in Bankruptcy approved the compromise, the order, in part, reading:

"Ordered that the said P. B. White, Trustee herein, is hereby authorized to accept the offer of settlement of W. L. Fentress, and to give him a release of all claims the

corporation may have against him, upon the receipt of an assignment of a certain deed of trust note, which deed of trust is dated the 23rd day of November, 1956, and is duly of record in the Clerk's Office of the Corporation Court of the City of Norfolk, Virginia, in Deed Book 749, at page 527, which said note is in the sum of $6735, and the said W. L. Fentress shall release any other claims that he may have against the bankrupt estate.

"It is further Ordered that the said Trustee, when such assignment is made and release is given, shall have all of the rights and benefits under the said deed of trust that the said W. L. Fentress now has or ever had, together with such other rights that the trustee may have under the Bankruptcy Law.

"It is further Ordered, upon considering the petition of the said Trustee herein, that the claim filed by J. L. Spencer on a deed of trust note, in which he alleged a balance due of $4600, which he has offered to reduce to $3000, is hereby accepted and the said note is reduced to the sum of $3000, and allowed as a secured claim."

As heretofore noted, the validity of the compromise of the Spencer note is not in controversy. However, as it is necessary to reverse the Referee's subsequent order of March 10, 1959, allocating the funds according to their priority, in all equity to Spencer his claim, as reduced by the compromise, should now be re-examined to determine whether or not he should be paid in full such amount as he indicated he would be willing to accept by way of a secured claim.

The foregoing compromise was as a result of the trustee's threatened action to set aside the second deed of trust securing the note due Fentress in the sum of $6735. The trustee contended, and still urges [1], that the trust deed was fraudulent as to Fentress. Let us examine the effect of the compromise order.

That Fentress was indebted to the corporation at the time of bankruptcy in at least the sum of $11,995, plus interest, covering the stock subscriptions cannot be doubted. The indebtedness is probably $12,500, plus interest, as Fentress agreed to pay the first deed of trust, but we need not consider this point. Against this indebtedness the corporation owed Fentress (1) some miscellaneous advances not disclosed by the record, (2) a claim for salary for the years 1957 and 1958 in an undetermined amount, (3) a demand note in the sum of $4,500 given by the corporation as a part of the consideration for the transfer of the real property at the agreed price of $12,500, and (4) the second deed of trust note in the sum of $6,735, plus interest, which note was of questionable validity due to the threatened action by the trustee to attack same on the ground of fraud. While it is not so indicated from the Referee's findings, counsel agreed in argument that a judgment against Fentress would be worthless.

From the foregoing it appears that Fentress, in consideration of the trustee's relinquishment of any claim against him, delivered to the trustee a release of his claim for advances and salary, neither of which would have been in the nature of a secured claim. He surrendered any rights against the corporation on the demand note of $4,500; rights which he never had as of the date of bankruptcy as this note was given as collateral for his agreement to pay off the deed of trust to the Bank. Lastly, Fentress assigned the second deed of trust note in the sum of $6,735 to the trustee, the validity of which is at least open to dispute.

---

1. The trustee filed no petition for review, but suggests that, if the Referee exceeded his powers in preserving the Fentress lien to the trustee, the matter should be remanded to the Referee with instructions to determine the validity of the lien and, if found to be fraudulent, that the lien be preserved for the benefit of the estate under § 67, sub. d(6) of the Act, 11 U.S.C.A. § 107, sub. d(6).

The Referee has stated that there is no injustice done to Evans Lumber Company in permitting the funds realized by the second deed of trust lien on the note for $6,735 to go to the general creditors. With this finding and conclusion the Court disagrees. Had the trustee been successful in setting aside this deed of trust (as respects the Fentress note) on the ground of fraud, Fentress would have received nothing affecting the Evans Lumber Company secured note. It would, at least, have reduced this indebtedness due Fentress to the general creditor class which would, in turn, have advanced the rights of Evans Lumber Company on the third deed of trust note with respect to the allocation of the proceeds for the sale of the realty. Such chances were completely removed by the Referee's action, made at the instance of the trustee and his counsel, in entering the compromise order of February 2, 1959, in which the Fentress lien was preserved for the benefit of the estate.

The compromise offer resulted in diverting a potential asset inuring to the benefit of Evans Lumber Company, a secured creditor, into an asset for the benefit of general creditors. Such a diversion is not contemplated by the Bankruptcy Act. True, the trustee could have assumed the position that the cost of any action to set aside as fraudulent that portion of the second deed of trust as refers to the Fentress note should be borne by Evans Lumber Company as the secured creditor likely to benefit by such action, but as no such action was taken we do not reach this point.

We think it clear that the action of the Referee in endeavoring to preserve the lien evidenced by the $6,735 note for the benefit of the general creditors was erroneous. No such authority exists under the Act of Bankruptcy and the authority to compromise, over objections of parties in interest, must be so limited. While the case law on the point is lacking, the fact that the Referee may, in his discretion, make certain specific preservation or subrogation provisions as set forth in §§ 60, sub. b, 67, sub. a (3), 67, sub. c, 67, sub. d(6) and 70, sub. e (2)—11 U.S.C.A. § 96, sub. b; 11 U.S.C.A. § 107, sub. a(3); 11 U.S.C.A. § 107, sub. c; 11 U.S.C.A. § 107, sub. d(6); 11 U.S.C.A. § 110, sub. e(2)—would suggest that a preservation of lien must fall within one of these statutory provisions of the Act. The general language contained in each of the provisions of the Act is to the effect:

"That the court may on due notice order such lien [title, transfer or obligation] to be preserved for the benefit of the estate and, in such event, the trustee shall succeed to and may enforce the rights of such transferee or obligee."

It is a safe assumption that Congress, in vesting discretionary powers with the court in certain instances, did not intend that such a lien could be preserved for the benefit of the estate under the compromise provisions as contained in § 27 of the Act, 11 U.S.C.A. § 50, where there is a bona fide objection by a party in interest who would be affected thereby.

If no such authority exists, as this Court believes, we need not consider the trustee's contention that the Fentress note is not discharged because the trustee holds the note in a purely representative capacity. In remanding this cause to the Referee, the Court expresses no view as to the validity of the compromise between the trustee and Fentress. The record does not reflect whether, as a part of the compromise, Fentress specifically agreed that the preservation of the lien to the benefit of the estate constituted one of the conditions of the compromise. If such was not a part of the compromise agreement, it is likely that Fentress has acquired rights thereunder. If, however, the preservation of the lien was a part and parcel of the offer made by Fentress, the trustee may still have a right of action against Fentress to set aside the trust deed as it applies to the note for $6,735. For like reasons it is unnecessary to discuss the views of counsel for Evans Lumber Company that the statutory provisions relating to set-off are applicable.

We turn, finally, to the trustee's insistence that this cause be remanded to the Referee for the purpose of determining whether the transfer from the corporation to Fentress was fraudulent under § 67, sub. d(6) of the Act, 11 U.S.C.A. § 107, sub. d(6). Admittedly the record is insufficient for this Court to make such a finding, even if we were to assume that the trustee had properly raised this question. Assuming arguendo that the question was properly raised by the trustee, that he is not barred by laches, and that the deed of trust was fraudulent under § 67, sud. d (6), 11 U.S.C.A. § 107, sub. d(6), we see no purpose that can be gained to remand as to this point. As suggested, the Referee could, on due notice, order the transfer or obligation preserved for the benefit of the estate. However, a review of the authorities would indicate that, under the facts here presented, the lien should not be preserved for the benefit of the general creditors.

As stated in Egyptian Supply Co. v. Boyd, 6 Cir., 117 F.2d 608, 610, 611, the object of the statute in preserving a lien is to avoid a preference or fraudulent transfer, and while the lien of a preferred creditor is annulled as a preference for himself, it is preserved for the benefit of himself and all his fellow creditors. The case presented an issue of priorities between an attachment creditor and mechanics' and materialmen's liens. As was clearly stated:

> "The court is not required to preserve such a lien under all conditions, but should exercise discretion and make the order only where consistent with the provisions of the Bankruptcy Law and principles of equity, and such lien should not be preserved merely for the purpose of displacing or defeating another lawful lien. First National Bank of Lincoln, Neb. v. Live Stock National Bank, 8 Cir., 31 F.2d 416.

> "If the funds available for general creditors may be increased by preserving the lien, it should be retained."

See also the opinion of the district court in the same case. In re Graves' Estate, D.C., 27 F.Supp. 717.

While the funds available for general creditors would be increased by preserving the lien, it is clear that it should not be preserved merely for the purpose of displacing or defeating another lawful lien. In remanding this case to the Referee, the Court expresses no opinion as to the validity of the lien held by Evans Lumber Company, and the trustee may, should he be so advised, attack the validity of such a lien. This memorandum is prepared under the assumption that the lien held by Evans Lumber Company is valid.

The trustee argues that a fraudulent deed of trust, voided in bankruptcy proceedings, should be held by the trustee for the benefit of all creditors, both antecedent and subsequent, and that, where there are other secured creditors, the voided obligation or transfer will be preserved for the benefit of all creditors, both secured and unsecured, who are to share equally as a result of the avoidance of the claim. This same argument was advanced and firmly rejected in In re American Fuel & Power Co., 6 Cir., 151 F.2d 470, 471, 479.

To permit consideration of an appeal from the decision of this Court, a reasonable time not exceeding twenty days will be permitted for the presentation of an order; said order to be prepared and presented by counsel for Evans Lumber Company. On the petition for review filed by O. M. Evans, T/A Evans Lumber Company, the cause will be remanded with directions not inconsistent with the views expressed herein, and costs awarded to the creditor seeking said review.

With respect to the petition for review as filed by Bowling Green Lumber Company, an order dismissing same has this day been entered.