**M. A. HOLAHAN, Trustee, Plaintiff,**

v.

**H. Mack LEWIS, Defendant.**

**Civ. A. No. 473.**

United States District Court
N. D. Florida,
Marianna Division.

March 29, 1960.

Paul J. Thriffiley, Jr., New Orleans, La., for plaintiff.

Joe J. Harrell, Jones & Harrell, Pensacola, Fla., for defendant.

CARSWELL, Chief Judge.

Trustee in bankruptcy brought this proceeding to set aside a transfer from Gulf Securities of Louisiana, Inc., (hereafter referred to as the corporation) to H. Mack Lewis, the defendant, urging the application of Title 11 United States Code Annotated, § 107 sub. d(2) (a), which provides that "Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; * * *"

This cause was heard by the Court sitting without a jury. Jurisdiction is authorized by Title 11 United States Code Annotated, § 46 (Section 23 of the Bankruptcy Act).

The trustee contends that the transfer was not made for a fair consideration as defined by the Bankruptcy Act. The defendant contends that there was fair consideration and also affirmatively pleads that Title 11 United States Code Annotated, § 107, is not applicable because the corporation was not insolvent at the time that the transfer was made.

The corporation entered into a contract with the City of Panama City, Florida, on November 4, 1955. Although the city is not a party herein an examination of the rights and obligations between the corporation and the city are necessary to an understanding of the issues here. The city undertook a large scale municipal waterfront improvement project. The completed project was to include a city hall, civic auditorium, marina, concession buildings, etc., constructed and equipped on lands to be acquired by the city. Under the terms of the contract (Plaintiff's Exhibit 26) the corporation was to prepare preliminary studies and feasibility reports, detail plans and specifications, handle advertisement for construction bids and financial data for the sale of bonds, and advertisements for the sale of bonds. The corporation was to render assistance to the city and make recommendations for the awarding of construction contracts; assist in the sale of the bonds; supervise and inspect the construction; and act as a consultant with city, county, state and federal agencies as needed.

It assumed the liability of paying the engineers and architects, legal counsel for preparation of legal documents and for the preparation and sale of the bonds. In addition the corporation was obligated to perform all other necessary essentials for the successful marketing of the bonds.

In exchange for these services, the corporation was to receive eight percent of the face value of the bonds sold. The face value of the bonds sold was $7,000,000 and the corporation's fee was $560,000. The corporation was to receive $490,000 at the time that the bonds were sold and $70,000 balance at the completion of the project.

The bond issue was sold on July 11, 1957. The liability of the city for the repayment of the bonds with interest is set forth in Plaintiff's Exhibit 13. On July 16, 1957 the city paid $490,000 to the corporation in accordance with the contract. On this same day the corporation caused to be issued check for $56,000 to the defendant, and it is this transfer which is the subject of this dispute.

On August 16, 1957 an involuntary petition in bankruptcy was filed against the corporation. (Plaintiff's Exhibit 3) The corporation had three corporate officers: President McDuff Fletcher, Vice President A. L. Busby, Secretary-Treasurer H. C. Haack. The Board of Directors of the corporation consisted of the above members and a fourth person, E. G. Stevens. The officers acted under the direction of the Board of Directors.

It is first necessary here to determine whether the corporation was, in fact, insolvent at the time of the transfer, i. e., July 16, 1957. (Plaintiff's Exhibit 19) Title 11 United States Code Annotated, § 107, sub. d(1) (d) states that insolvency is met when the present fair salable value of property is less than the amount required to pay debts.

As of June 30, 1957 the balance sheet of the corporation showed total assets in the amount of $120,628.60. (Plaintiff's Exhibit 5)

The secretary-treasurer of the corporation testified that the corporation had accounts at two different banks prior to the receipt of the $490,000 fee from the city. (January 7, 1960 deposition at page 12 et seq.) As of the middle of July, 1957, the balances in these accounts totaled $60.70. There was $500 petty cash on hand. Of the other salable assets there were two depreciated fixed assets valued at $2,187.58. There was $2,500 in stock which was invested which could be considered a salable asset. A larger item of $103,288.49, he testified, was more of an expense item, and it was, in fact, partially expended as an advance for services. Testimony supports the contention that the services were at least partially-performed. (Busby Deposition, January 7, 1957, page 14; Haack Deposition, October 4, 1957, page 12 et seq.) There was no showing as to what, if any, portion might still be owing to the corporation for services. The Court finds that this was not a salable asset. The advances to employees were for services which were subsequently performed. These advances were not salable assets. The Court finds that the total salable assets prior to the receipt of the $490,000 fee were approximately $5,300. The receipt of this fee by the corporation and the disputed transfer by the corporation to the defendant both occurred on the same date, July 16, 1957.

The net capital and deficiency of the corporation as of June 30, 1957 was $279,330.27. (Plaintiff's Exhibit 5) It is clear that prior to receipt of the fee from the city the corporation was insolvent.

The defendant contends that the receipt of the fee itself rendered the corporation solvent, and that some of the disbursements which were made were not valid obligations of the corporation. The defendant also refers to manipulation of the corporate assets by the officers and directors as tending to prove that the corporation was solvent.

The testimony of the Certified Public Accountant who prepared the June 30, 1957 balance sheet showed that the corporation had been undercapitalized and, in addition, had been operating on borrowed assets almost from its inception. The testimony of Haack showed that the corporation could not meet its obligations, and that despite the $490,000 fee, the obligations incurred prior to the receipt of the fee, coupled with the after acquired obligations incident to the Panama City project, were, in fact, much greater than the fair salable value of the property (including cash) required to pay the corporate debts. The defendant introduced no evidence tending to prove that any of the obligations were invalid, beyond establishing the fact that some of them were owing to other business entities in which one of the officers was principal owner. There was nothing offered to establish fraud therein.

The Court construes the definition of insolvency as defined in Section 107 as the controlling one in the application of Section 107 sub. d(2) (a) et seq. The definition of insolvency as enunciated in Section 1, Subsection 19, carries a far broader sweep than does Section 107. It is apparent that Congress intended less stringent proof of insolvency in Section

107 than in other phases of bankruptcy proceedings. Even requiring the more rigid showing, however, the Court finds on the evidence here that the trustee has sustained the burden of proof by a preponderance of the evidence with respect to the insolvency of the corporation on the date of the disputed transfer to defendant.

The remaining issue, then, is whether or not the disbursal of $56,000 of corporate funds on July 16, 1957 to the defendant was made for fair consideration as previously defined.

In answer to the trustee's contention that this sum did not represent any valid consideration whatsoever to the corporation, the defendant, in his pleadings, says the money was compensation for certain riparian rights owned by him for which he conveyed title, not to the corporation, but to the city. Defendant says he had a verbal contract with the corporation to do just this. Upon trial the defendant made the additional contention that the $56,000 paid to him was made by the corporation to insure the "acceleration" of the project, this acceleration being equated to defendant's willingness to put up no *vigorous* legal defense in a condemnation proceeding brought by the city in state court. It is his contention that his placid acquiesence in the state court condemnation verdict was worth a great deal to the corporation, even though, admittedly, the corporation itself was not in any way responsible for payment for any land or riparian rights. This is so, he contends, because his precept of ostensible satisfaction lulled others who owned adjacent riparian rights into satisfaction with a lesser sum, and they did not take such adamant action for larger compensation as to endanger the financial feasibility of the city's project. Defendant's vigorous legal efforts in the condemnation case would have thus inflated the land values and the city would have been unable to proceed. All of which, by this chain reaction triggered by defendant's "vigorous" legal action, as distinguished from his actual but *pro forma* defense in a state condemnation trial, would lead to collapse of the city's entire project and the corporation's loss of its fee.

In the light of these contentions the record is here summarized.

William Welliver, Executive Vice President of the Bay National Bank, trustee for the city's funds, testified that there were sufficient funds for the acquisition of riparian rights by the city.

In support of his contention that the corporation made a verbal contract with him for the sale of his riparian rights, totally apart from the condemnation proceeding in which he was a party with the city, the defendant testified that Fletcher, then president of the corporation, visited him on a number of occasions and agreed to pay him. Fletcher specifically denied any such verbal agreement. The other officers of the corporation who testified also each denied having entered into any such contract, although Haack and Busby testified that the payment of $56,000 to the defendant was authorized by them in the belief that Fletcher had contracted with the defendant. Fletcher had been previously removed as president by action of Haack, Busby and Stevens, and the testimony is undisputed that Fletcher was not informed of the payment to the defendant until some time later. There is no writing with respect to any contract between the corporation and the defendant, although certain letters from the defendant to the corporation were allowed in evidence.

Defendant's letter of December 3, 1956 to Fletcher (Defendant's Exhibit No. 4) makes reference to the fact that, in its negotiations for the city, the corporation agents had discussed certain purchases of riparian rights with other individuals, not involving defendant, and commented that this was "unfortunate" since those people did not own any riparian rights. This action would thus create bad will endangering the success of the entire project. Defendant said he wanted to discuss the matter.

On January 3, 1957 defendant wrote Fletcher that they must "arrive at a meeting" about the matter or he would

notify his attorneys to protect his interest, together with the final statement: "I might add as a matter of information that there won't be any waterfront development unless our negotiations are satisfactory." (Plaintiff's Exhibit No. 22)

Defendant's letter of January 8, 1957 to Fletcher (Plaintiff's Exhibit No. 23) best speaks for itself:

"January 8th, 1957
"Gulf Securities of Louisiana, Inc.
919 Richards Building
New Orleans 12, Louisiana
"Attention: Mr. McDuff Fletcher
"Dear Mr. Fletcher:

"Our recent conference concerning the rights of Gulf Coast Development Company, its heirs and assignees, namely myself, I feel was extremely fruitful.

"You have explained to me that the City of Panama City has obligated itself to pay $10.00 per front foot to the present owners and that any amount of money paid to myself, the rightful owner of these rights, will have to be borne by your company and taken out of your fees. This is indeed a heartbreaking situation. It is my understanding that you are to receive some $560,000.00 for your services to the City and I have concluded that 10% of your fee from the City would be a reasonable price for you to pay in order to avoid losing the entire amount. I have no other alternative except to tell you to either accept or reject this offer so that I may instruct our attorneys as to our attitude in the matter.

"Very truly yours,
"_____
H. M. Lewis
"HML:eh

On August 14, 1957, almost a month after Busby had authorized the payment of $56,000 to the defendant and it had been received by him, defendant wrote the corporation, this time to the attention of Haack, since Fletcher had been removed as president, generally reviewing the situation and commenting that the "embarrassment" to the corporation of having to go back to other property owners had been avoided and that a satisfactory price had been arrived at between the corporation and the defendant. He also commented that he was transmitting a deed from himself to the City of Panama City "which is being held until condemnation proceedings against all of that property is completed" since "it was felt that it would be poor public relations for (the corporation) if their name appeared in condemnation proceedings filed by the city * * *" Defendant assured the corporation that he would be delighted to give the corporation a deed if desirable "since it is a simple land transaction and since these rights that belong to us have long been established through the courts."

That the defendant had so established claim to riparian rights involved was urged here by reference to certain litigation, West Florida Gas and Fuel Company v. Gulf Coast Development Company, said action arising in the Fourteenth Judicial Circuit for Bay County, Florida. Examination thereof discloses that this does not establish any legal right whatsoever, it merely establishes the fact that defendant's predecessor in title reserves certain rights to place certain utilities thereon.

As noted above the condemnation suit brought by the city in the state court was commenced August 8, 1957, less than one month *after* the disputed transfer of the cash from corporation to defendant. In this suit the defendant was named as a party, duly served and appeared through counsel. He received some $6,400 award for his property rights thus condemned at the same time that other parties defendant in that cause received their compensation for their property rights, all of which totaled some $159,000. At no time did the defendant here make any claim in that suit of any additional property rights although now in this litigation he asserts that he had riparian

rights on many of the parcels claimed by other defendants in the condemnation suit and for which the other defendants were paid.

It should be noted that the defendant in his letter of January 8, 1957 to Fletcher, quoted in full above, concluded that the reasonable value of his land, and/or services, was, remarkably enough, precisely 10% of the fee which the corporation was to earn from the city.

A careful examination of all of the testimony with reference to the various parcels of land in the condemnation suit, the amount paid for each parcel, the broad but unsupported assertion of defendant of riparian rights on some of the parcels leads the Court to the conclusion that the defendant was adequately compensated in the state court action. This finding, however, is not necessary in order to support the ultimate conclusion here, for the action of the state court in setting compensation on subject land, in which this defendant was a party, duly represented by counsel, was conclusive as to the value of his property rights. Moreover, plaintiff urges that Florida Statutes Annotated, § 73.14 precludes delay by landowners in condemnation proceedings since no right under this statute exists for a supersedeas appeal. Therefore, threat of delay or promise to accelerate, as alternatively advanced by defendant here, would be a nullity if not also lacking in other essential elements. The Court further concludes that there is insufficient evidence to support defendant's contention that there was a verbal contract between the corporation and himself. Even if, as he contends, there were such verbal contract covering riparian rights, as a matter of law such verbal contract for the sale of land cannot be asserted in this oblique fashion. If, as defendant contends, there were an agreement that he refrain from pursuing a vigorous legal defense the same conclusion holds. There is evidence to show that he did oppose the condemnation suit although it cannot be said whether this was done "vigorously" or placidly. This Court cannot determine the intensity of opposition in a condemnation suit so as to justify a finding that there was sufficient opposition thereby to constitute consideration in a wholly unrelated contract between different parties.

Such conduct is no consideration to support an alleged verbal contract but is more in the nature of unwarranted interference in the contractual rights of the city and the corporation.

In accordance with the foregoing the Court concludes:

1. The corporation was insolvent as of July 16, 1957, and, therefore, trustee's action to set aside a transfer made without actual fraudulent intent is proper under Title 11 United States Code Annotated, § 107.

2. The transfer of $56,000 by the corporation to the defendant here on July 16, 1957 was lacking in fair consideration in accordance with Title 11 United States Code Annotated, § 107(d)(1)(e) and should be set aside in accordance therewith.

Order to this effect is entered this date.