Harvey M. GREENE, as trustee in bankruptcy of the Estate of Elkove Delicatessen & Restaurant Corp., bankrupt, Plaintiff,

v.

Ernest J. ELLIS and The County Trust Company, Defendants.

No. 67 Civ. 3120.

United States District Court,
S. D. New York.

Aug. 18, 1971.

Benjamin Leibowitz & Myer Leibowitz, New York City, for plaintiff; Benjamin Leibowitz, New York City, of counsel.

Dulman & Geller, Yonkers, N. Y., for defendant Ernest J. Ellis; Seymour A. Geller, Yonkers, N. Y., of counsel.

## OPINION

COOPER, District Judge.

This action is brought by a trustee in bankruptcy to set aside a chattel mortgage as in fraud of creditors, to recover the amount collected thereunder and to preserve the lien of the mortgage for the benefit of the estate. Jurisdiction is conferred by 11 U.S.C. § 11 et seq. Judgment for the plaintiff in the amount of $31,468.48. This opinion[1] constitutes our findings of fact and conclusions of law pursuant to Rule 52, F. R.Civ.P.

We adopt as findings of fact as though fully set forth herein the stipulations of the parties. Transcript ("Tr.") pp. 24–32.[2]

To the extent of $29,793.00, the balance of the purchase price on the first portion of the stock purchased, the mortgage and the assumption of the debt by the corporation were without any consideration. To the extent of $27,540.00 relating to the 1963 sale, the mortgage and assumption of the debt by the corporation were without fair consideration. The restrictive covenant was a mere incident to the sale of the stock. There is no allocation of consideration in the Agreement with respect to the restrictive covenant. As we interpret the Agreement, the consideration for the restrictive covenant was nominal at most. Accordingly, the assumption of the mortgage to the extent of $57,333.00 was without fair consideration.[3]

The book value of the corporation was $27,763.72 according to the balance sheet of April 30, 1963. As the fair salable value of the corporation's assets measured by book value was less than its $57,333.00 liability, the corporation was "insolvent" as of the date of the assumption of the obligation, the transaction which was without fair consideration was fraudulent, and it can be set aside by the trustee. N. Y. Debtor and Creditor Law, McKinney's Consol. Laws, c. 12, §§ 271, 272, 273; Bankruptcy Act § 70(e), 11 U.S.C. § 110. Although book value is not necessarily controlling as a measure of the fair salable value of a corporation's assets, Holahan v. Lewis, 182 F.Supp. 473 (N.D.Fla. 1960); Halsey v. Winant, 258 N.Y. 512, 180 N.E. 253 (N.Y.C.A.1932), it is evidence thereof and is the only sustainable measure on the proof offered by both parties before us. Its accuracy and reg-

1. The directive of our Circuit to give primary attention to criminal matters accounts for the somewhat belated disposition of this matter.

2. Defendant County Trust Company has been discontinued from the action. Tr. p. 22.

3. The alleged re-payment from salary was not consideration. The "salary" payments were actually payments from the bankrupt. Exhibit "Employee's Record"; Tr. p. 27.

ularity are conceded. We are not shown any proof sufficient to warrant us to depart from it.

Defendant seeks to counter the book value figure by arguing: whatever may be the general rule as to book value it does not apply because surplus was purposely and consistently kept at a minimum; that $40,000 represented the value of one-third (⅓) of the stock of the corporation at an arm's-length sale at a time contemporaneous with the assumption of the mortgage and debt.

However, there is a paucity of proof before us and we are not shown (among other things which might be supportive or even dispositive of defendant's contentions) any of the following or other related facts: what extractions of surplus were made prior to the sale of the first and second installments of stock— to support the claim that the book value was understated and that the corporation resembled a subchapter S corporation in this regard; why there was such a discrepancy in price per unit between the 1962 and 1963 sales of stock, particularly in view of the instrumental role which the defendant played in arranging the transactions and assumption by the corporation of the debt and mortgage; how the price for the initial and subsequent portions purchased was determined; what efforts were made to advertise and solicit bids so that the sale of either portion of stock was at a price representing a true current market valuation; how much of the $40,000 represented valuation of the stock itself exclusively and not other factors peculiar to the relationship between the seller, purchasers and the corporation such as the cost of obtaining complete control or the ability to finance through the business what might have been a high ratio of debt to cash.

Additionally, the stipulation relating to the testimony of a hypothetical expert witness only provided that assuming defendant's position as to the $40,000 arm's-length transaction was correct, the total value of the corporation would have been $120,000. Tr. pp. 30–32; Plaintiff's reply memorandum, pp. 2–3. Defendant does not contend that his expert would testify that the $40,000 sale was at arm's-length or that $40,000 was a proper valuation itself.

In the absence of such or similar evidence of an impressive nature, we cannot accept defendant's position relating to the fair salable value of the corporation's assets.

Plaintiff has offered no authority for recovery of the funds paid defendant by the second mortgagee. Plaintiff concedes the trustee cannot recover payments made by a stranger. The second mortgagee was in fact a separate and distinct party; he was not a party to the mortgage between the corporation and defendant. The funds paid by the second mortgagee did not deplete the assets of the corporation and the payments themselves did not operate to the disadvantage of creditors of the corporation. The trustee therefore cannot recover these funds.

■■ The lien of the second mortgage is not preserved for the benefit of the estate. Bankruptcy Act, § 67(d) (2), 11 U.S.C. § 107. We will preserve the lien only where it is consistent with the principles of equity as well as the provisions of the bankruptcy law to do so. 4 Collier on Bankruptcy ¶ 67.16 at p. 186 (14th Ed. 1969). Contrary to the trustee's suggestion, the lien should not be preserved merely for the purpose of displacing or defeating another lien. In re Arrington Lumber, Inc., 180 F.Supp. 543 (E.D.Va.1960).

Equity does not require preserving the lien. We have no evidence of an evil intent to defraud creditors. The proof of liability by a preponderance of the credible evidence has been thinly established, and a stronger showing by defendant might have avoided it entirely. Defendant began by establishing a transaction to finance the purchase and sale of a delicatessen, with much of the obligation to him unpaid due to bankruptcy and cessation of payments by the second mortgagee. Defendant will now be required to return considerable funds.

984

In addition, we note that none of the payments which the trustee now seeks to obtain in any way depleted the assets of the corporation; so the parties have stipulated. Finally, while the amount of a judgment may exceed the amount of the claims filed, such is the case here, and we feel that any inequity to the trustee and creditors in not preserving the lien is accordingly diminished.

There being no just reason for delay, the Clerk is directed to enter judgment in favor of plaintiff and against defendant Ellis in the amount of $31,468.48.

Plaintiff shall serve a copy of this opinion on the second mortgagee, a nonparty to this action, within five (5) days following notice to plaintiff of the filing of this opinion.

So ordered.