In re TRI–SONIC, INC., Bankrupt.

Tim TRUMAN, Trustee, Plaintiff,

v.

UNITED STATES of America (Internal Revenue Service) United States Small Business Administration; Bob Bullock, Comptroller of Public Accounts; Texas Employment Commission; Reed Stewart, Tarrant County Tax Assessor-Collector; Lake Worth Independent School District; OMC Stern Drive, Defendants.

Bankruptcy No. BK4–77–332.

United States Bankruptcy Court,
N. D. Texas,
Fort Worth Division.

Oct. 30, 1979.

Tim Truman, Fort Worth, Tex., for trustee.

Joe Colvin, trustee.

William W. Guild, Dallas, Tex., and Richard B. Vance, Asst. U. S. Atty., Fort Worth, Tex., for U. S.

Connie Ode, Asst. Atty. Gen., Austin, Tex., for State of Tex.

## MEMORANDUM OPINION

JOHN FLOWERS, Bankruptcy Judge.

This case involves three questions: (1) whether the trustee can take an assignment of liens he attacked as voidable and use them against the junior lien holders, (2) the validity of such liens against the junior claimants, and (3) whether certain tax liens should be postponed to the payment of administrative costs and wage claims.

The bankrupt was engaged in the business of manufacturing boats and operating a marina. Over the years numerous liens were given on the bankrupt's assets and various assignments have been made of these liens. The common starting point for this case is June 30, 1967, at which time the Continental State Bank of Boyd held a lien on all of the bankrupt's assets. These assets were personal property consisting of machinery, inventory and equipment, a leasehold estate and various boat-houses and buildings annexed to the leasehold. There was on file in the appropriate state offices as of that date a deed of trust granting a lien on the leasehold, a Uniform Commercial Code fixture filing for the boathouses and buildings, and a Uniform Commercial Code Financing Statement for the personalty. On January 24, 1972, when the balance due was $10,602.65 Continental transferred the note and all liens to the Inwood National Bank of Dallas. This transfer was part of a general refinancing and at the same time Inwood loaned the debtor $250,000.00 and took a new security agreement. The collateral description in this security agreement included the statement: "assignment with the right of reassignment of all leases . . ." Inwood promptly filed a Uniform Commercial Code Financing Statement with the Secretary of State listing the leases, machinery, equipment, and inventory as collateral. This last lien was extended five years later by a timely filed continuation statement. The assignment from Continental to Inwood of the deed of trust lien on the realty was never recorded, and no filings were made to extend Continental's original fixture filing. Inwood advanced additional money in March 1973, taking another security agreement on essentially all of the bankrupt's personal property. On September 1, 1977, these notes and security agreements were transferred to the Small Business Administration and a Uniform Commercial Code assignment notice was filed with the Secretary of State. The Small Business Administration had advanced additional sums directly to the bankrupt on August 9, 1977, and on August 12, 1977, filed a financing statement with the Secretary of State showing a lien on the bankrupt's machinery and equipment.

On April 27, 1977, the Internal Revenue Service filed its notice of lien for a debt which is now $18,586.82, and on September 23, 1977, the State of Texas filed a notice of lien for a tax debt which is now $31,046.11.

After this bankruptcy case was filed on September 30, 1977, the trustee notified the Small Business Administration he contested the validity of its lien. The trustee did not commence litigation against them but negotiated a settlement which was approved by the Court. The essential portions of this settlement provided for the trustee to retain certain personal property and $55,000.00 from the proceeds of the sale of the bankrupt's assets. The agreement also provided the Small Business Administration would assign its liens to the Trustee. The Internal Revenue Service and the State of Texas were not parties to the settlement agreement although it provided "such settlement is without prejudice to other lien claimants to assert a lien upon $55,000.00 specifically the State of Texas and the Internal Revenue Service". The Small Business Administration has been paid $145,000.00 by the trustee and has no further claim. The trustee now asserts the lien claims of the Internal Revenue Service and the State of Texas to the $55,000.00 are inferior to the lien of the Small Business Administration which was assigned to him in the settlement and therefore the funds should not be disbursed to those lienholders but paid to creditors in accordance with the priorities established in § 64 of the Bankruptcy Act. Under that distribution the funds will be substantially depleted by paying the administrative costs and wage claims of approximately $21,400.00 before the taxing authorities receive any payment.

The first question is whether the trustee can take an assignment of a lien to defeat inferior liens for the benefit of unsecured creditors. The Internal Revenue Service advances several equitable arguments in general opposition to the use of senior liens by the trustee to defeat junior lienholders in bankruptcy. These include assertions it is inequitable for the trustee to claim the liens are invalid against one party and valid against another; that the happenstance of bankruptcy should not affect their liens; and that it is unfair for the trustee to attack them for the benefit of other creditors.

It is the duty of the bankruptcy trustee to liquidate the assets of the estate. Bankruptcy Rule 605. To this end Congress has given him an arsenal of avoidance powers so the maximum amount may be recovered for distribution in accordance with the scheme of equality of payment to creditors. These powers are found in Sections 60, 67 and 70 of the Bankruptcy Act. Secured creditors are the trustee's most frequent target. If their liens withstand his attack, secured creditors occupy a unique position in that they are entitled to their security or its proceeds without sharing it with the other creditors and they also may have an unsecured claim for any deficiency. §§ 57h, 65a Bankruptcy Act; Bankruptcy Rule 306; *United States Natl. Bank in Johnstown v. Chase Natl. Bank,* 331 U.S. 28, 67 S.Ct. 1041, 91 L.Ed. 1320 (1946). The powers given the trustee were not designed for him to take consistent positions. In fact section 70c. so states. Rather, they were designed to bring back into the estate certain transferred property, regardless of the position the trustee might take. It is not the happenstance of bankruptcy that defeats certain liens, but the deliberate policy of Congress. The fact the trustee used his powers to attack the lien of the Small Business Administration and then claims the Small Business Administration's senior status defeats junior liens means the trustee is diligently pursuing his responsibilities. Without some type of subordination junior liens would reap the results of the trustee's efforts and thereby gain a windfall which Congress intended should go to the unsecured creditors. If the trustee had taken no action against the Small Business Administration it would have received all of the proceeds of the sale to the exclusion of both taxing authorities.

A more serious contention by the State and the Internal Revenue Service is that the assignment deprives them of their right to have the question of preservation decided

in an adversary proceeding as prescribed by Bankruptcy Rule 611. The State says the assignment should not be binding on it because it was not a party to the settlement agreement. The Internal Revenue Service says there is no statutory authority for the trustee to take an assignment and it is unfair for the trustee to conjure up transactions to defeat otherwise valid claims and that preservation can not be used when the trustee settles his claims. The trustee defends the assignment on the grounds he is given the rights of certain types creditors in section 70c. of the Act and under state law those creditors could take such an assignment. It should be noted that section 27 of the Act authorizes the trustee to enter into compromises with the approval of the court "upon such terms as he may deem for the best interest of the estate".

 The State cites *In Re Arrington Lumber Incorporated,* 180 F.Supp. 543 (E.D. Va., 1960) in support of its argument the trustee cannot take an assignment of a lien. In that case the court held the trustee could not take an assignment of a lien because it would displace a junior lienholder. The court also held the lien could not be preserved for the same reason. As authority for its position the court quotes a partial passage from the 6th Circuit case of *Egyptian Supply Co. v. Boyd,* 117 F.2d 608 (6th Cir., 1941) to the effect a lien can not be preserved to defeat another lawful lien. That is a misinterpretation of *Egyptian Supply* because in that case the court held the attachment lien which was sought to be preserved was in fact inferior to the mechanic's liens and for that reason preservation was denied. In *Egyptian* the court said:

> "If the present attachment lien was superior to the mechanic's and materialman's lien, its preservation would have tended to bring about a pro rata participation of all the bankrupt's creditors in his estate, which is one of the objects of the statute and in such cases the court should preserve the lien."

What *Egyptian Supply* holds is that the trustee can't preserve a lien when it's infe-

rior under state law to the one he seeks to displace. Or, to state the obvious, preservation is pointless when the lien sought to be preserved is inferior because preservation does not enhance its status. A literal application of the ruling in *Arrington* would preclude the trustee from ever seeking preservation of a lien. The preservation of liens is authorized under certain sections of the Act and Rules. §§ 60b., 67a.(3), 67d.(6), 70e.(2) and Rule 611. The apparent distinction between preservation and an assignment of a lien is that the right of preservation is discretionary with the court whereas an assignment presumably is not. *First Nat. Bank of Lincoln v. Live Stock Nat. Bank,* 31 F.2d 416 (8th Cir., 1929); 13 Collier ¶ 611.06; see Bankruptcy Rule 611. There is no specific authority in the Act or Rules authorizing or prohibiting the trustee from taking assignments. Although I disagree with the reasoning of the *Arrington* case, I am of the opinion the trustee should not be permitted to take an assignment and use it to defeat inferior liens. This opens the door farther than Congress was willing to go. The trustee is given special powers to attack lien creditors. Frequently, cases have several different lien claimants with which the trustee deals separately. Using his powers to negotiate assignments puts him in a manipulating position. An assignment giving him an absolute right eliminates the discretion of the court to grant or deny the preservation of transfers. Preservation is designed to prevent a windfall to junior lienholders and it should only be used for this purpose. Keeping it a discretionary matter will better serve this purpose. It is true the settlement agreement here preserved the junior lien holders' rights to be heard, but this may not always be the case, and the safeguards of Rule 611 could be subverted by permitting assignments in that the junior lienholders might be deprived of notice and a chance for hearing. As to the claim that preservation is not applicable to settlements there is no objection to the trustee settling a claim against a secured creditor and then requesting preservation in an appropriate adversary proceeding. Nothing in the Act or Rules mandates litigation as a prerequisite to preser-

vation. To require litigation would obviously discourage settlements.

■ The State raises one final point on the issue of preservation which merits discussion. It argues the right of preservation is limited to instances of recoveries under one of the specific avoiding sections of the Act. This argument goes to the fact there is nothing in the record to show the trustee's settlement here resulted from an assertion by him of one of those specific avoiding sections which gives the right of preservation. Prior to 1952, only sections 60b and 67a(3) contained preservation provisions which by their express terms were limited to liens or transfers which were voidable under those specific sections. In 1952, § 70e(2) of the Act was amended to permit the trustee to preserve for the benefit of the estate *any* transfer which was voidable by the trustee under *any* Federal or State law *for any reason.* The legislative history makes clear the purpose of the amendment was to extend the preservation provisions to situations other than transactions voidable under §§ 60b and 67a(3) so that the benefits intended to the estate would not be passed to junior interests not otherwise entitled thereto. House Report No. 2320, 82nd Cong. 2nd Sess. (1952) 16.

This is an adversary proceeding which the trustee originally instituted for authority to sell the assets free of liens and asserting the invalidity of certain liens. After the sale and settlement the trustee filed an amended complaint seeking to use the assignment of the lien of the Small Business Administration to defeat the tax liens of the Internal Revenue Service and the State. Although his right to use the assignment is denied, in the interest of justice the trustee is given leave to amend to request preservation under Rule 611. The junior interests may reply.

■ In anticipation of the trustee's amendment, to avoid further delay, and since the record is now complete on the status of the liens it is appropriate to consider the second question which is the alleged priority of the Small Business Admin-

istration's liens against those of the taxing authorities. As noted above, preservation does not enhance the status of the trustee's liens so that if they would have been defeated by the junior claimants while in the hands of the original lienholders, they are also vulnerable in trustee's and therefore preservation would be pointless.

*The Fixture Filing*

■ Continental had perfected its lien in the fixtures by filing with the County Clerk a Uniform Commercial Code Fixture Filing on June 30, 1967, in compliance with the requirements of §§ 9.302(a), 9.313 and 9.401(a)(2) of the Texas Uniform Commercial Code. The failure to file a notice of the transfer of the lien on these assets from Continental to Inwood to the Small Business Administration is immaterial because §§ 9.302(b) and 9.405(b) of the Texas Code make the filing of notices of transfers of liens permissive rather than mandatory. § 9.403(b) of the Code provides that liens expire after 5 years unless a continuation statement is filed. The five year period expired June 30, 1972. The trustee points out the exception to the five year rule found in § 9.403(f) which provides that liens on fixtures that are included in a recorded real property mortgage and therefore prefected under § 9.402(f) do not need to be extended. § 9.403(f) automatically extends such liens until the real property mortgage is ". . . released or satisfied of record or its effectiveness otherwise terminates as to the real estate." This exception was enacted by the Texas Legislature in 1973 and became effective on January 1, 1974. § 11.105(d) of the Code also effective on January 1, 1974, makes this provision retroactive to mortgages recorded prior to its enactment. The competing liens of the taxing authorities were perfected in 1977 after the filing gap was closed by § 11.105(d) therefore its retroactive effect does not impinge their rights and avoids Constitutional issues. The deed of trust contains a provision granting a lien on fixtures. It is possible this mortgage remains unsatisfied thereby extending the

liens on the fixtures created in the security agreements. That possibility is discussed in the next section of this opinion dealing with the deed of trust.[1]

*Leasehold*

Three attempts were made by Inwood to perfect a lien in the leasehold estate: (1) under the Uniform Commercial Code by filing a financing statement, (2) by taking an assignment of the lease, and (3) by taking an assignment from Continental of its deed of trust line on the lease. The lien was then assigned to the Small Business Administration and then to the trustee.

■■ The effort to perfect a lien on the leasehold estate by its inclusion in the collateral description of the financing statement is ineffective. In section 9.104(10) the Uniform Commercial Code specifies that the creation and perfection of liens on leases are excluded from its provisions.

Article 6627 of the Revised Civil Statutes of Texas provides in part:

"All bargains, sales and other conveyances whatever, of any land, tenements and hereditaments, whether they be made for passing any estate of freehold of inheritance or for a term of years; . . . and all deeds of trust and mortgages shall be void as to all creditors . . . unless they shall be . . . filed with the clerk, to be recorded as required by law . . ."

Art. 6631 provides that once recorded they are valid against all creditors from the time of recording and Art. 6646 provides that recording is notice to all persons.

■■ In this case the deed of trust granting a lien on the leasehold estate to Continental was properly recorded on June 30, 1967. In 1972 when the balance due Continental was $10,602.65 the lien was transferred to Inwood and eventually to the Small Business Administration. These subsequent assignees loaned additional funds to the bankrupt. None of the assignments of this lien nor any renewals or extensions of it were ever recorded. This deed of trust does not contain a clause securing any other indebtedness which may be owing to the holder. The bankrupt also executed a separate assignment of the lease to Inwood which was assigned to the Small Business Administration. None of these were recorded either.

Although Art. 6627 refers to any creditors, the Texas Courts have added two important requirements for creditors seeking its benefits: (1) they must be lien creditors, and (2) they must not have notice, *Paris Grocery Co. v. Burks,* 101 Tex. 106, 105 S.W. 174 (1907); *Henderson v. Odessa Building and Finance Co.,* 24 S.W.2d 393 (Tex.Comm. App., 1930). The filing of the notice of tax liens by the Internal Revenue Service and the State elevated them to lien creditors. *U. S. v. Creamer Industries, Inc.,* 349 F.2d 625 (5th Cir., 1965). There is no evidence they had actual notice of the assignment of the leases to Inwood or the Small Business Administration nor is there anything of record to give them constructive notice of such assignment. The assignment of the leases clearly falls within the terms of Art. 6627 and the failure to record the assignment makes it void as to the Internal Revenue Service and the State. *Paris Grocery Co. v. Burks,* supra, *Henderson v. Odessa Building and Finance Co.,* supra.

■■ The failure to record the assignment of the deed of trust lien is a different

---

1. It is of course possible the buildings annexed to the leasehold had not become fixtures. See § 9.313(a)(1) Texas Business and Commerce Code. However, this possibility is immaterial to a disposition of this case because if they have remained personalty there is nothing recorded to perfect a lien on them. Furthermore there is no need for a preservation of liens on personal property here because the taxing authorities' liens on such property are postponed to the payment of § 64a(1) and (2) claims after which the taxing authorities are entitled to a fifth priority which will deplete any remaining funds. §§ 64a(1), (2), (5), 67c.(3) Bankruptcy Act. It is also possible the buildings had become so attached to the realty to become fixtures and perfection of a lien on them was made pursuant to Texas real estate law. § 9.313(c) Texas Business and Commerce Code.

matter. In certain instances recording is necessary. For example, when a lien assignment is unrecorded and the assignor executes a release (wrongfully) and the property is later mortgaged or sold to an innocent purchaser for value without notice, the second mortgagee or purchaser cuts off the assignee's rights under the lien. *Moran v. Wheeler,* 87 Tex. 179, 27 S.W. 54 (1894); *Gibson v. Morris,* 47 S.W.2d 648 (Tex.Civ. App., 1932, error refd.). The lack of notice is the key. There is no notice because the record shows the lien to be released. Here there is notice because the record shows an outstanding lien in favor of Continental. The fact the lien has been assigned to someone other than the record owner does not change the fact constructive notice is given of the existence of the lien on the bankrupt's lease. In *Long Falls Realty Co. v. Anchor Elec. Co.,* 405 S.W.2d 170 (Tex.Civ. App., 1966, no writ hist.) there was a recorded deed of trust but the assignment of it was unrecorded when the abstract of judgment was filed. The Court held that the recording of the deed of trust was sufficient to put the creditor on notice and the fact the assignment was unrecorded did not effect the assignees superior rights under the mortgage. As to the assignment of the deed of trust lien on the lease, the Internal Revenue Service and State fail to meet the requirement they be without notice.

■ Following the assignment of the lien by Continental in 1972 payments presumably have been made upon the note. The record does not reflect whether this note has been paid in full. Since the deed of trust does not have an other indebtedness clause it cannot secure any of the other notes and therefore preservation, if allowed, will be limited to the extent of this lien. Further evidence will be required to determine what amount, if any, remains unpaid on Continental's original note.

*Personal Property*

■ Neither the State nor the Internal Revenue Service contend the contractual liens on the personal property are defective. Section 67c(3) of the Bankruptcy Act provides:

"Every tax lien on personal property not accompanied by possession shall be postponed in payment to the debts specified in clauses (1) and (2) of subdivision a of section 64 of this Act . . . ."

There are no junior lien claims to the proceeds of the personal property therefore the remainder of the section is immaterial. See 4 Collier on Bankruptcy ¶ 67.27[3.1] pp. 388–394. Clauses (1) and (2) of section 64a. provide for priority payment for administrative costs and wage claims. To the extent the proceeds represent personal property, payment of the lien claims of the taxing authorities must be postponed until the claims specified in clauses (1) and (2) have been paid in full.

The term "personal property" is not defined in § 67c(3) or elsewhere in the Act. The question then arises whether it includes the proceeds from the buildings annexed to the leasehold. The phrase "personal property not accompanied by possession" was first included in § 67 in 1938 by the Chandler Act amendments. The purpose of the amendments was to stop a developing trend for states to express their priorities in terms of liens thus defeating the scheme of priorities in § 64 of the Act. Floating liens on personal property were criticized because of an inability to ascertain the property subject to the lien. This was not a problem with realty because it remained constant, but because of its nature personalty in the hands of the mortgagor was subject to change. The problem was particularly acute as to statutory liens, such as tax liens which typically attached to "all property" of the taxpayer.[2] By limiting certain liens on personalty to that property in the possession of the lien claimant it was hoped to add a measure of certainty to the lien status of any particular item of personal property. House Report No. 2320, 82nd Cong., 2nd Sess. (1952) 13.

2. For example see Art. 1.07, Taxation—General, Vernon's Annotated Revised Civil Statutes of Texas.

 It is a function of federal law to construe the meaning of the Bankruptcy Act because it is an enactment of Congress. Aside from the doctrine of *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) in some circumstances the federal courts look to state law where federal statutes do not clearly articulate the law to be applied. As noted by Professor Moore the line where reference must be made to state law and where federal decisional law will control is not always clear. Vol. 1A Moore's Fed. Practice ¶ 0.323[22]. See *United States v. Standard Oil Co.,* 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1946) where the Court said:

> "In other situations it may fairly be taken that Congress has consented to application of state law, when acting partially in relation to federal interests and functions, through failure to make other provision concerning matters ordinarily so governed. And in still others state law may furnish convenient solutions in no way inconsistent with adequate protection of the federal interest." p. 309, 67 S.Ct. at 1609.

In the Bankruptcy Act there is an intertwining of state and federal law. 4A Collier ¶ 70.06. In the absence of a specific definition in the Act and where not contrary to its policies state law has frequently been applied to fill the interstices of Bankruptcy Act. This has been the case when determining the nature and extent of property interests. An array of examples are collected in Vol. 1A Moore's Fed. Practice ¶ 0.322[1] pp. 3293–3301.

There are no cases interpreting this clause of § 67c(3) and as noted that term is not defined in the Act.[3] Questions regarding the status of personal property attached to realty is a recurring one in state law which is well developed on this subject. It is convenient to use state law. The use that law to determine this question places a priority on certainty and probably anticipates the expectations of the parties. The solution of this problem through the use of state law does not create any inconsistency with the Congressional policies behind the enactment of this portion of § 67. In view of the historical use of state law in the interpretation of numerous other portions of the Bankruptcy Act it can be fairly said that Congress expected and consented to such result by leaving the term undefined.

 In Texas, the question of whether fixtures have lost their character as personal property and become a part of the realty is determined by a threefold test: (1) was the article annexed to the realty (2) was the article fit for the uses of the realty and (3) was it the intention of the party making the annexation that it become a permanent accession to the realty. Intent is the preeminent factor. 25 Tex.Jur.2nd, Fixtures § 4 p. 395; *Marco Co. v. State,* 168 S.W.2d 510 (Tex.Civ.App., 1943, error refd.). All of these are fact questions. *Goodyear Service Stores v. Clegg,* 361 S.W.2d 445 (Tex.Civ. App., 1962, no writ hist.). Since this was not the subject of pleading or proof at the hearing of this matter it will be considered on the hearing of the trustee's application to preserve the lien.

Due to the size of the claims of the Internal Revenue Service and the State of Texas and their status as fifth priority claimants regardless of their lien position the unsecured creditors will not receive any distribution. Therefore, further evidence will be required to determine (1) the proceeds attributable each, to the lease, the personalty and the buildings annexed to the leasehold; (2) whether under state law the buildings are fixtures and therefore a part of the realty or whether they have retained their character as personal property; (3) the extent of the unpaid balance of the deed of trust lien and whether the trustee should be permitted to preserve it to the extent of its unpaid balance; and, (4) if the real property mortgage has been released, satisfied of record or its effectiveness otherwise terminated. It will be necessary to determine preservation of the

---

**3.** In one rather obvious decision which is not helpful to a solution of the problem here, the court held pipe in a warehouse was personalty against a contention it was realty because it was sold with the warehouse. The court did not discuss the problem of personalty attached to realty. *In Re Rhine,* 213 F.Supp. 527 (D.Colo., 1965).

liens on the leasehold and buildings. Tax liens on personalty are postponed to payment of the § 64a(1) and (2) claims. The limitation on the lien on the leasehold based upon the unpaid portion of the original indebtedness does not apply to the lien on the buildings because that lien is granted in the security agreements and by their terms is security for all indebtedness. Inclusion in the real property mortgage is a manner of perfection under § 9.402(f). It is not dependant upon the terms of the real property mortgage which is limited to certain debts. It is however dependant upon that mortgage remaining unsatisfied for its continued existence. All proceeds from the personal property will be paid to the § 64a(1) and (2) creditors. If the trustee is permitted to preserve the lien on the leasehold and buildings such funds attributable to those liens will also be paid to the § 64a(1) and (2) creditors. When those claims have been satisfied any remaining funds will be paid to the Internal Revenue Service and the State of Texas. If preservation is denied the funds from the sale of the lease and the fixtures to the extent they have become part of the realty will go to satisfy the Internal Revenue Service and the State and any remaining to the § 64a(1) and (2) creditors.