**In re BLUE COAL CORPORATION, Debtor.**

**In re GLEN NAN, INC., Debtor.**

**James J. HAGGERTY, Esquire, Trustee for Blue Coal Corporation and Glen Nan, Inc., Plaintiff,**

**v.**

**McCLELLAN REALTY CORPORATION; David A. Tamburo; Parente, Randolph & Co.; Anthracite Health & Welfare Fund; Erie Lackawanna Railroad Co.; State Equipment Corporation; Warner Co.; John Baser; Robert C. Haldeman; George Solomon & Sons; Rockwood Insurance Company; Commonwealth of Pennsylvania, Department of Revenue; ITT; Techweld, Inc.; Hajoca Corp.; Bridon–American Corp.; Mine Safety Appliance Co.; National Mine Service Co.; Lincoln Robinson, t/a Atlantic Equipment & Supply; and Mary Ellen Buckley, Defendants.**

Bankruptcy Nos. 76–1311, 78–604.

United States Bankruptcy Court, M.D. Pennsylvania.

March 30, 1990.

See also, Bkrtcy., 67 B.R. 798.

John H. Doran, Robert C. Nowalis, Wilkes–Barre, Pa., for trustee.

Charles A. Shea, III, A. Richard Caputo, Wilkes–Barre, Pa., for Anthracite.

D. Alan Harris, Harris & Ruble, Chicago, Ill., for Com. of Pa.

## OPINION AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

Before the Court for consideration are cross motions for Summary Judgment. This matter was initiated by a Complaint of James J. Haggerty, Esquire, Trustee for Blue Coal Corporation and Glen Nan, Inc. (hereinafter "Trustee") pursuant to § 70(e) of the Bankruptcy Act seeking to preserve for the benefit of the estate certain liens and security interests formerly held by one of the named defendants, McClellan Realty Corporation (hereinafter "McClellan"). De-fendant, Anthracite Health & Welfare Fund (hereinafter "Anthracite") filed a Motion for Summary Judgment. The Trustee responded by filing an Answer and a cross-motion for Summary Judgment. For the reasons provided herein, we grant the Motion for Summary Judgment filed by Anthracite and deny both the Motion for Summary Judgment filed by the Trustee and the relief requested by the Trustee in his Complaint to preserve certain avoided liens.

A short procedural and factual history of this matter is helpful. On December 16, 1976 an involuntary Chapter VII petition in bankruptcy was filed against the Blue Coal Corporation and thereafter, on February 22, 1977, Blue Coal Corporation was adjudicated a bankrupt. On or about August 18, 1975, Anthracite obtained a judgment against Blue Coal in the Court of Common Pleas of Luzerne County, Pennsylvania, in the approximate amount of $2,420,000 representing unpaid pension fund contributions. At that time, Blue Coal was also subject to certain prior mortgage liens in the total approximate amount of $8,530,000 held by defendant, Institutional Investors Trust and subsequently assigned to McClellan.

On or about December 12, 1980, the United States commenced an action against Blue Coal in the U.S. District Court for this District and certain of its corporate affiliates pursuant to § 7403 of the Internal Revenue Code (26 U.S.C. § 7403) in order to foreclose and sell property subject to its tax liens. This litigation resulted in three separate court decisions: *United States v. Gleneagles Investment Co.*, 565 F.Supp. 556 (M.D.Pa.1983); *United States v. Gleneagles Investment Co.*, 571 F.Supp. 935 (M.D.Pa.1983); and *United States v. Gleneagles Investment Co.*, 584 F.Supp. 671 (M.D.Pa.1984). As a result of that litigation, it was determined that McClellan's mortgages constituted fraudulent conveyances under the Pennsylvania Uniform Fraudulent Conveyance Act found at 39 P.S. §§ 354–357. McClellan then appealed the District Court's decision on the fraudulent conveyance issue to the United States Court of Appeals for the Third Circuit.

The Trustee filed a cross appeal arguing that the underlying McClellan mortgage debt be deemed satisfied because of a commercially unreasonable sale of other collateral also securing the debt which sale was in violation of the dictates of the Uniform Commercial Code and, in particular, § 9–504. On October 20, 1986, the Trustee filed this adversary proceeding pursuant to § 70(e) of the Bankruptcy Act seeking to preserve the avoided mortgage liens for the benefit of the estate.

Thereafter, on October 22, 1986, the United Court of Appeals for the Third Circuit sustained the District Court's finding that the McClellan mortgages were fraudulent as to other creditors, but, in addition, further found in favor of the Trustee and determined that the mortgages were completely invalidated under § 9504 of the Pennsylvania Uniform Commercial Code by reason of McClellan's commercially unreasonable disposition of other collateral in order to satisfy the underlying indebtedness. See *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288, 1306–1307 (3rd Cir.1986). The Trustee seeks to preserve these avoided liens for the benefit of the estate.

Anthracite argues that by reason of the holding of the Third Circuit, the liens subject to this controversy have been discharged in their entirety and are no longer available for preservation. Further, that because the avoided liens no longer secure any indebtedness, the estate can derive no benefit from lien preservation. In short, Anthracite's argument does not concern the validity or invalidity of the avoided liens per se but, rather, focuses on the question of whether a lien exists at all because the underlying indebtedness was extinguished and the Circuit Court found that as to the Trustee in bankruptcy, McClellan was not a creditor. In support of these arguments, Anthracite draws the Court's attention to a series of bankruptcy cases dealing with the preservation of lien issue under the 1978 Bankruptcy Code.

The Trustee, on the other hand, relies primarily on the statutory authority granted to the Trustee to preserve avoided liens found in § 70(e)(2) of the Bankruptcy Act. That section must be read in conjunction with Bankruptcy Rule 611 which provides as follows:

"Whenever any transfer is voidable by the Trustee, the Court may determine, in an adversary proceeding in which are joined persons claiming interests or rights in the property subject to the transfer, whether the transfer shall be avoided only or should be preserved for the benefit of the estate."

Rule 611 was promulgated by the U.S. Supreme Court in 1973. The Advisory Committee Notes to this rule indicate its derivation from §§ 60b, 67a(3), 67c(2), 67d(6) and 70e(2) of the old Bankruptcy Act. See Chabot, *Preserving Liens Avoided In Bankruptcy—Limitations and Applications*, 62 Am.Bank.L.J. 149–157, at 150, fn. 6. The Advisory Committee note also provides that the power to preserve a lien is derived from the equity powers of the court. 2 *Norton Bank. L & Prac.*, § 37.03, fn. 12 citing S.Rep. No. 95–989, 95th Cong.2d Sess. 91 (1978); H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 376 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 5877, 6332.

The Trustee contends that the major policy reason allowing a Trustee to preserve a lien is that "the Trustee stands to expend very significant sums in the prosecution of litigation and then have the immediate benefits of a successful conclusion of that litigation go not to the estate but to the benefit of junior lienholders who took their junior lien positions subject to the very same senior lien the Trustee was successful in avoiding." Trustee's Brief at p. 4. The Trustee then distinguishes each of the cases cited by Anthracite and asserts that those cases should not be binding upon this Court and that their conclusions were not legally persuasive, logical or consistent. In short, the Trustee warns that this Court should not give too broad a reading to what he considers are the holdings and conclusions of the cases relied upon by Anthracite dealing with this preservation issue which he summarizes as follows: "a Trustee can-

not enhance a preserved lien's priority viz a viz other liens on the property." Trustee's Brief at page 8. The Trustee also maintains that a too broad application of this reasoning to the Trustee's powers and obligations under both Bankruptcy Act § 70(e)(2) and Bankruptcy Rule 611 would always render lien preservation impossible because of the following:

"i) a trustee may not enhance the status of an avoided lien;

"ii) in order to be avoided by the trustee in the first instance, the lien must be subject to some defect which the trustee asserts in order to avoid the lien; therefore,

"iii) a trustee may never preserve any lien since he would thereby, *ipso facto*, be enhancing its avoidable status."

A review of all pleadings filed in this matter and the Briefs reflects that the parties essentially agree as to all the facts. The Trustee, however, focuses on his statutory authority to avoid and preserve liens. On the other hand, Anthracite looks beyond the validity or invalidity of the lien itself and focuses on the effect the decision of the Court of Appeals in *U.S. v. Tabor, supra,* had on the underlying indebtedness.

The Trustée's approach to this case could conceivably be sustained if we only considered the District Court finding (*Gleneagles III*) that the McClellan mortgages were actually fraudulent conveyances and, therefore, void for that reason. But the Trustee himself draws our attention to the fact that the Circuit Court went further than just sustaining the District Court's finding of fraudulent conveyances. He directs our attention to *United States v. Tabor Court Realty,* supra, at page 1307 which provides as follows:

"Because the district court found McClellan's sale of the Raymond collateral commercially unreasonable, *Savoy v. Beneficial Consumer Discount Co.,* 503 Pa. 74, 468 A.2d 465 (1983) requires that we reverse the district court's decision in *Gleneagles III* to the extent that it recognizes McClellan's status as a creditor as against the trustee in bankruptcy. To the extent that the district court recognized a mortgage lien, *see* 584 F.Supp. at 688, as distinguished form an equitable lien representing county tax payment, the district court erred in failing to invalidate the mortgage lien completely."

The Trustee argues that based upon both the District Court and the Circuit Court Opinions, the liens which were avoided by those court rulings can now be preserved for the estate. Anthracite, however, argues that not only were the liens avoided but also the underlying debt itself was extinguished by the Circuit Court ruling. Consequently, Anthracite's argument continues that the liens no longer secure any indebtedness and therefore cannot be preserved. We agree.

We repeat that Anthracite does not really contest the Trustee's position that he has power to preserve certain avoided liens nor does it per se attack a defect in the lien itself, but rather argues that the lien in this matter, with or without a defect, simply does not attach to any indebtedness whatsoever. The Circuit Court decision in *United States v. Tabor, supra,* not only found the liens avoidable because they were violative of the Pennsylvania Fraudulent Conveyance Act, but further held that as to the Trustee, McClellan was not a creditor because the underlying indebtedness had been extinguished because of McClellan's failure to abide by the dictates of the Uniform Commercial Code as a result of the sale of other collateral securing the indebtedness. This result is the same as if a debtor paid in full a debt to a creditor. While the lien securing the indebtedness may still be of record it is of no force and effect and attaches to no security because the underlying indebtedness is extinguished.

The instant case is also analogous to the *In re Appalachian Energy Industries* case found at 25 B.R. 515 (Bankr.M.D. Tenn.1980) and relied upon by Anthracite. In *Appalachian Energy, supra,* a creditor did not follow the dictates of the UCC and failed in its attempt to perfect a purchase money security interest when it did not file

a financing statement within the 20 day grace period provided by the Uniform Commercial Code as adopted by Tennessee. In the case at bar there was found to be a commercially unreasonable sale of collateral securing debt in violation of UCC § 9–504. Both Trustees have argued that the liens could be preserved for the benefit of the estate.

In both the instant case and the *Appalachian* case, the failure to comply with the Uniform Commercial Code was controlling vis a vis the Trustee's attempt to avoid the lien. "Section 551 cannot be utilized by the Trustee to cure defective liens to the detriment of properly perfected secured creditors." *In re Appalachian Energy Industries* at 517. This reasoning also applies to former § 70(e)(2) of the Bankruptcy Act and we adopt it for this proceeding.

We also direct the parties attention to the case of *In re Bagnato*, 80 B.R. 655 (Bankr.S.D.N.Y.1987) in which a Chapter VII debtor sought to exempt proceeds from the sale of an automobile after the Trustee had avoided a lien on the vehicle and preserve it for the benefit of the estate. In *Bagnato*, the Court found that the creditor was no longer a creditor of the debtor after the order of discharge was entered and consequently, there was no claim for the Trustee to set aside or preserve for the benefit of the estate. We find that the same reasoning should prevail in this case because the underlying indebtedness giving rise to the mortgage liens was extinguished, resulting with no lien or claim for the Trustee to preserve. Lien preservation is a matter given to the discretion of the Bankruptcy Court in cases under the Act. See *4 Collier on Bankruptcy*, 14th edition, ¶ 67.16 at page 186. Further, lien preservation should not be granted which would be pointless or otherwise not result in an increase in the funds available for general creditors. *Egyptian Supply Co. v. Boyd*, 117 F.2d 608, 610–611 (6th Cir.1941) and *In re Tri–Sonic, Inc.*, 1 B.R. 138, 142 (Bankr. N.D.Tex.1979). We find that because the underlying debt was extinguished there is no lien to preserve and, therefore, lien preservation would be pointless.

Consequently, we grant summary judgment in favor of Anthracite and against the Trustee on his cross motion for summary judgment. We further deny the relief requested by the Trustee in the Complaint to preserve the avoided McClellan liens for the benefit of the estate.

IT IS SO ORDERED.