In the Matter of Joseph L. DeLANCEY, Debtor.

Bankruptcy No. 85 B 20100.

United States Bankruptcy Court, S.D. New York.

Dec. 20, 1988.

Barr and Faerber, Spring Valley, N.Y., for trustee.

Cusack & Stiles, New York City, for USF & G.

## DECISION ON MOTION TO RECLASSIFY CLAIM OF UNITED STATES FIDELITY & GUARANTEE COMPANY

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The trustee in bankruptcy in this Chapter 7 case seeks to stand in the shoes of an avoided unperfected senior attachment lienor, and to obtain priority pursuant to 11 U.S.C. § 551 over a subsequently perfected junior secured claim held by United States Fidelity and Guarantee Company (USF & G). Based upon the funds available in this estate, the net effect of the trustee's motion is to relegate USF & G's junior perfected lien to that of an unsecured claim.

### FACTUAL BACKGROUND

The debtor, Joseph L. DeLancey, was the principal of a roofing business known as Commercial Roofing, Inc., which had an office in Allentown Pennsylvania. Various creditors of the roofing business commenced an action against the debtor and his company in the Pennsylvania Court of Common Pleas, Perry County Branch, which resulted in an order dated October 1, 1984, directing the sale of certain roofing equipment and machinery, with the proceeds to be held in escrow by one of the plaintiffs, Juniata Valley Bank (the

"Bank"). The net proceeds were in excess of $44,000.

The Pennsylvania Court ruled on March 13, 1985 that the debtor, Joseph DeLancey, was the individual owner of the equipment which had been sold to generate the funds held by the Bank.

On March 25, 1985, Joseph Nazario, t/a Nazario Development Company, and Nazario Brothers (collectively known as "Nazario") intervened in the Pennsylvania action, based on a claim for materials furnished to the debtor and his business. On April 14, 1984, Nazario commenced suit against the debtor, his wife, and his business in the Federal District Court for the Middle District of Pennsylvania. On the same day, Nazario caused a writ of attachment to be levied against the escrow account in the Bank's control because Nazario did not serve the debtor personally with the summons and complaint.

On May 11, 1984, USF & G filed UCC–1 Financing Statements against the debtor and his wife. The UCC Statements, as well as a judgment note were filed as a result of USF & G's issuance of performance and payment bonds on behalf of the debtor and his corporation. The debtor defaulted under these bonds in excess of $500,000. Accordingly, USF & G entered a lien on the records of the Court of Common Pleas of Perry County, Pennsylvania, on May 11, 1984, in the amount of $500,000.

On May 30, 1985, Nazario obtained a judgment on consent in the amount of $79,-054.90 against the debtor's corporation and his wife.

Nazario could not obtain a judgment against the debtor because of the automatic stay imposed under 11 U.S.C. § 362(a).

In a *Decree Nisi* issued by the Court of Common Pleas of Perry County, Pennsylvania, dated July 24, 1985, it was ruled that Nazario's interest in the proceeds held in escrow by the Bank had priority over the interests of the other lienors against the debtor, including USF & G, because Nazario's interest "attached on the date of the service of the writ of attachment on the Bank on April 14, 1984." The court stated that under Pennsylvania law:

Service of an attachment creates a valid lien which prevails over a subsequent execution. *Appeal of Wagner*, 13 W.N. C. 505 (Pg. 1883). This is true even though the filing of the writ of execution takes place before judgment is obtained on the attachment. *Rice v. Walinszius*, 12 Pa.Super. 329 (1900).

After the commencement of this Chapter 7 case, the trustee sought to avoid the Nazario lien, pursuant to 11 U.S.C. § 544(a)(1), because Nazario did not perfect the attachment lien against the debtor by obtaining a judgment against him. The trustee also invoked 11 U.S.C. § 551, which allows a trustee to preserve an avoided lien for the benefit of the estate in order to prevent a windfall to junior lienors who otherwise would benefit by the elimination of a senior lien. This relief was incorporated in the trustee's motion, which sought summary judgment and the issuance of an order directing that the trustee's position was senior to all secured claims against the estate.

The trustee's motion for summary judgment was brought in the exercise of the so-called strong arm powers available to the trustee under 11 U.S.C. § 544(a). Pursuant to a decision dated September 3, 1987, this court entered a partial summary judgment in favor of the trustee directing the Bank to turn over the proceeds held in escrow to the trustee. *In re DeLancey*, 77 B.R. 424, 430 (Bankr.S.D.N.Y.1987). However, there remained unresolved questions of fact, which precluded a determination of the trustee's claimed priority over all secured claimants, including USF & G. The court did note, however, that Nazario's lien was inchoate or conditional, because it did not obtain a judgment against the debtor. The court quoted from *In re Savidge*, 57 B.R. 389, 391 (D.Del.1986), which ruled that a lien created by a domestic attachment, is conditional upon the subsequent recovery of a judgment and if a judgment cannot be obtained, the conditional lien is dissolved.

USF & G now contends that the Nazario attachment lien is an inchoate or conditional lien and that the attachment lien is dis-

solved and unavailable for preservation under 11 U.S.C. § 551.

## DISCUSSION

USF & G argues that the trustee in bankruptcy is subrogated under 11 U.S.C. § 551 to the unsecured status of Nazario's inchoate or conditional attachment lien, which was unperfected because no judgment was entered in favor of Nazario before the debtor filed his bankruptcy petition. Therefore, USF & G reasons that its subsequent in time perfected lien on the debtor's property is superior to Nazario's prior in time unperfected lien, with the result that the trustee should not benefit the unsecured creditors of this estate by stepping into Nazario's shoes in order to prime USF & G's perfected lien.

The rationale behind the automatic preservation rule for transfers and liens avoided by a trustee in bankruptcy is that the estate should benefit from each avoidance rather than promoting the priority of unavoidable junior secured interests who would otherwise improve their positions at the expense of the estate. 2 Norton, Bankr.L. & Prac. § 37.01 (1988). However, the trustee who avoids and then preserves a senior secured claim cannot acquire greater rights in the property in question than those to which the trustee succeeded. *Connelly v. Marine Midland Bank, N.A.*, 61 B.R. 748, 750 (W.D.N.Y.1986); (Unperfected and avoided prior interest was junior to a perfected subsequent secured lien under state law); *In re Appalachian Energy Industries, Inc.*, 25 B.R. 515, 517 (Bankr. M.D.Tenn.1982) (Unperfected and avoided lien was junior in status under state law to an after-acquired property interest lien which was subsequent in time, but perfected). Thus, when under state law, the avoided lien which is sought to be preserved is inferior to subsequent valid liens, the inferior lien cannot be enhanced by its preservation under 11 U.S.C. § 551. If the avoided lien will sink below other liens against the estate, the trustee who stands in the shoes of the inferior avoided lien will likewise sink while in those shoes, because 11 U.S.C. § 551 does not create a floating lien for trustees.

It is therefore necessary to ascertain the status of Nazario's lien under state law as of the time when the debtor commenced his bankruptcy case. This is so because the trustee's avoiding powers under 11 U.S.C. § 544(a) are expressly stated to arise "as of the commencement of the case." Indeed, even before this language was adopted, it was held that the line of cleavage with reference to the estate was fixed as of the time at which the petition was filed. *Bailey v. Baker Ice Machine Company*, 239 U.S. 268, 36 S.Ct. 50, 60 L.Ed. 275 (1915). When this Chapter 7 case was commenced on March 5, 1985, Nazario held a valid unperfected attachment lien which was superior to USFG's subsequent in time lien which was perfected by filed UCC Financing Statements. This point was confirmed by the Pennsylvania Court of Common Pleas, Perry County Branch, in an action commenced by a creditor involving property which that court determined to belong to the debtor, rather than to his corporation. In determining the priority among creditors for purposes of state law, the Pennsylvania court ruled on July 24, 1985 that Nazario's attachment created a valid lien which prevails over subsequent in time perfected liens of other creditors, including USF & G. Nazario was granted priority with respect to the escrow funds held by the Bank.

In view of the fact that the Pennsylvania court ruled that the proceeds held in escrow by the Bank belonged to the debtor rather than to his corporation, this court then ruled that the Pennsylvania court's findings gave rise to the application of the doctrine of collateral estoppel, with the result that the escrow proceeds were property of the debtor individually, and therefore, property of the estate within the meaning of 11 U.S.C. § 541. Accordingly, the Bank was a "custodian" as defined in 11 U.S.C. § 101(10) and was directed to turnover the funds to the trustee pursuant to 11 U.S.C. § 543(b) for distribution in accordance with the priorities established under the Bankruptcy Code. *In re DeLancey*, 77 B.R. at 429.

Although the trustee previously moved for summary judgment and for an order directing that he had priority over all secured claims because he could set aside Nazario's claim and preserve it for the benefit of the estate, this court did not grant summary judgment for the trustee, notwithstanding that Nazario's cross-motion for summary judgment declaring that Nazario was entitled to the escrow funds was also denied. Accordingly, Nazario's secured claim was not avoided. The Bank was simply directed to turn over the escrow funds to the trustee.

The holding in *In re Savidge*, 57 B.R. 389 (D.Del.1986), is instructive. In *Savidge* an attachment lien, which had not ripened into a judgment before the commencement of the debtor's voluntary Chapter 7 case, was dissolved as a result of the debtor's discharge in bankruptcy. A subsequent in time judgment creditor, and not the trustee in bankruptcy, objected to the secured status of the attachment lienor. The attachment creditor argued that 11 U.S.C. § 546(b) was authority for the proposition that its attachment lien was the type of interest in property which could be perfected even after the debtor filed for bankruptcy. The District Court noted that if the debtor had been served personally rather than by attachment of his property, the judgment that the creditor might have obtained was dischargeable in bankruptcy. Therefore, the debtor's discharge in bankruptcy meant that the attaching creditor's judgment could not be recovered. Hence, the attaching creditor's conditional lien could no longer be perfected by judgment against the debtor and was dissolved.

■ In the instant case, this court had previously denied the debtor's discharge in bankruptcy pursuant to 11 U.S.C. § 727(a)(3) and (5) for failing to keep or preserve records from which his financial condition might be ascertained and for failure to explain satisfactorily losses and deficiencies in assets. *In re DeLancey*, 58 B.R. 762 (Bankr.S.D.N.Y.1986). Therefore, the Nazario attachment lien could be pursued after the debtor's bankruptcy and could ripen into a judgment lien. None-theless, the trustee has assumed that Nazario's prejudgment attachment lien is vulnerable, although the trustee has not filed any further motion on notice to Nazario to avoid Nazario's lien. Indeed, the trustee has not apprised this court of any reason why a creditor's claim against a nondischarged debtor should be avoided in order to permit the trustee to poach on that creditor's claim. The trustee's motion to reclassify USF & G's claim assumes that the trustee has already avoided Nazario's claim and that he has preserved that claim for the benefit of the estate so that he might stand in Nazario's shoes with priority over subsequent in time validly perfected secured interests.

Unfortunately for the trustee, Nazario's shoes are too large for his feet. Nazario may continue to rely on its prejudgment attachment as an inchoate or conditional lien under Pennsylvania law. In the event that Nazario obtains a judgment against the nondischarged debtor, such lien will ripen into a vested lien to the extent of the attached funds. Manifestly, the trustee may not stand in Nazario's shoes to defeat perfected lien creditors who are junior to Nazario. Although the trustee has attempted to try on Nazario's shoes in order to preserve assets for the benefit of unsecured creditors, this court finds that the shoes don't fit. This finding is consistent with the old maxim that the same shoe does not fit every foot.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (K).

2. The trustee has not avoided the Nazario claim and may not, therefore, stand in Nazario's shoes and preserve the Nazario claim for the benefit of the estate in accordance with 11 U.S.C. § 551.

3. The trustee's motion to reclassify the claim of USF & G and to establish his

priority to the escrow funds based on 11 U.S.C. § 551 is denied.

SETTLE ORDER on notice.