In the Matter of Joseph L.
DeLANCEY, Debtor.

Harvey S. BARR, as Trustee, Plaintiff,

v.

JUNIATA VALLEY BANK, Allied Roofers Supply Corp., John F. Keer, Florence S. Keer, Eberts Bonsall and Kenneth Bonsall d/b/a O. Bonsall & Sons, Marla DeLancey, Joseph Nazario t/a Nazario Development Company, Nazario Brothers Corporation, United States Fidelity & Guarantee Company and Commercial Roofing Co., Inc., Defendants.

Bankruptcy No. 85 B 20100.

United States Bankruptcy Court,
S.D. New York.

Oct. 27, 1989.

Sinrod, Olsen & Tannenbaum, Massapequa, N.Y., for defendant, Nazario.

Barr & Faerber, Spring Valley, N.Y., for trustee.

DECISION ON MOTION FOR TURNOVER OF FUNDS AND CROSS–MOTION FOR ATTORNEY'S FEES AND EXPENSES

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

Joseph Nazario t/a Nazario Development Company and Nazario Brothers Corporation ("Nazario"), a creditor holding a perfected lien against funds recovered by the trustee in bankruptcy in this case, has moved for an order directing the trustee to turn over the funds to Nazario, which now total $48,346.84. The trustee does not object to the motion, but has cross-moved for an order charging attorney's fees and expenses against Nazario pursuant to 11 U.S.C. § 506(c). The trustee argues that extensive time and efforts were expended in order to put Nazario in a position to recover the funds and that the trustee should receive fees of $20,100.00 and ex-

penses of $248.01 from the funds turned over to Nazario.

## FACTS

The debtor, Joseph L. Delancey, was the principal of a roofing business known as Commercial Roofing, Inc., which had an office in Allentown, Pennsylvania. Commercial Roofing, Inc. purchased certain roofing equipment which was the subject of various claims asserted by creditors in the Pennsylvania Court of Common Pleas, Perry County Branch. Some of the creditors held claims against the debtor's corporation, others held claims against the debtor personally and others held claims against both the debtor and his corporation.

On October 1, 1984, the Pennsylvania Court of Common Pleas granted an order to the various creditors directing the sale of the roofing equipment and machinery involved in the debtor's business, with the proceeds to be held in escrow by the Juniata Valley Bank ("the Bank"). The proceeds now amount to $48,346.84.

Nazario intervened in the Pennsylvania action, based on a claim for materials furnished to the debtor and his business. On April 14, 1984, Nazario commenced suit against the debtor, his wife and his business in the Federal District Court for the Middle District of Pennsylvania. On the same day, Nazario caused a writ of attachment to be levied against the escrow account in the Bank's control. Nazario did not serve the debtor personally with the summons and complaint. According to the subsequent ruling of the Court of Common Pleas, Perry County, Pennsylvania, dated July 24, 1985, Nazario's interest in the proceeds held in escrow by the Bank had priority over the interests of the other lienors against the debtor because Nazario's interest "attached on the date of the service of the writ of attachment on the Bank on April 14, 1984." The court ruled that Nazario's attachment created a valid lien which prevails over a subsequent execution. This was true even though the filing of the writ of execution took place before a judgment was obtained by Nazario on the

attachment. The attachment created a conditional lien under Pennsylvania law which could ripen into a judgment lien and relate back to the date of attachment upon the entry of a judgment.

By order dated July 24, 1985, the Pennsylvania Court of Common Pleas noted that Nazario had obtained a judgment against the debtor's corporation and his wife for $79,054.90 on May 30, 1985 and that Nazario's priority over other creditors attached in April of 1984 when Nazario's writ of attachment was served. Because the debtor's interest in the personal assets would be exhausted after the satisfaction of Nazario's claim, the court determined that there was no need to examine the priority claims of junior lienors.

By order dated August 8, 1985, the Pennsylvania Court of Common Pleas recognized the existence of the debtor's bankruptcy case, which was filed on March 5, 1985, and stayed the effect of its prior orders, noting that Nazario's judgment was not effective as to the debtor because of this bankruptcy case. The court further said: "In the event judgment is eventually entered in the same proceeding against Mr. Delancey, then it would appear that the judgment will relate back to [the] time of attachment as well as was the case in the other individual and corporate defendant."

Nazario was stayed from proceeding further against the debtor and obtaining a judgment against him because on March 5, 1985, the debtor filed with this court his voluntary petition for Chapter 7 relief.

In a decision dated March 12, 1986, this court denied the debtor's discharge in bankruptcy pursuant to 11 U.S.C. § 727(a)(3) and (5) for failing to keep or preserve records from which his financial condition might be ascertained and for failure to explain satisfactorily losses and deficiencies in assets. *In re Delancey*, 58 B.R. 762 (Bankr.S.D.N.Y.1986). Therefore, Nazario's attachment lien could be pursued after the debtor's bankruptcy and could ripen into a judgment lien that related back to the date of attachment.

Thereafter, the trustee sought to reclassify the lien claimed by another creditor by

standing in Nazario's shoes for seniority purposes. However, the trustee was unsuccessful because this court ruled that Nazario's lien had not been set aside and that because the debtor's discharge had been denied, Nazario could obtain a judgment against the nondischarged debtor which would ripen into a vested lien to the extent of the attached funds. *In re Delancey,* 94 B.R. 311, 314 (Bankr.S.D.N.Y.1988). Therefore, the trustee could not assume that Nazario's lien had been set aside.

On January 4, 1989, Nazario obtained a default judgment against the debtor in the United States District Court for the Middle District of Pennsylvania in the sum of $79,-054.90. This judgment ripened Nazario's conditional lien against the debtor into a vested lien to the extent of the attached funds, which lien relates back under Pennsylvania law to the date of Nazario's attachment.

## DISCUSSION

Nazario was twice blessed in its proceedings against the debtor. First, the state court in Pennsylvania found that Nazario's sale of roofing equipment to the debtor's business was a personal obligation of the debtor rather than a corporate debt. Secondly, without any prior active participation by Nazario in this bankruptcy case, this court ruled that the trustee's successful objection to the debtor's discharge enabled Nazario to proceed to obtain a judgment against the nondischarged debtor, thereby perfecting a conditional attachment lien against the proceeds from the sale of roofing equipment sold to the debtor. Now the trustee in bankruptcy would like to achieve a mixed blessing by charging Nazario's attached funds for attorney's fees and expenses pursuant to 11 U.S.C. § 506(c).

The trustee reasons that extensive time and effort was expended in order to put Nazario in a position to claim the attached fund and that while it cannot be said that the trustee's efforts were intended to be exclusively for Nazario's benefit, Nazario was the sole beneficiary. Unquestionably, the trustee and his counsel expended substantial time and effort in skillfully reclaiming the funds held in escrow by the Bank pursuant to the order of the state court. Additionally, the trustee and his counsel expertly prepared and successfully tried an adversary proceeding resulting in the denial of the debtor's discharge. Manifestly, Nazario would have had no perfected right to the attached funds had the trustee not succeeded in objecting to the debtor's discharge. Indeed, the beneficial effect to Nazario from the trustee's successful objection to the debtor's discharge was not apparent to Nazario until the trustee attempted to resolve the priority claims asserted by other creditors by moving for summary judgment. Although Nazario did not participate in the trustee's motions, Nazario reaped the benefit of the results by learning that it could obtain a judgment against the nondischarged debtor which would perfect its conditional lien as of the date of the execution of its writ of attachment. The trustee maintains that his delivery of the attached funds to Nazario, without charging Nazario with the expense of acquiring the funds, would be an unjust enrichment because if it were not for the efforts of the trustee and his counsel, Nazario would have nothing. The trustee concludes that Nazario's success "was a surprise to everyone, including Nazario."

■ There is no question that this court is a court of equity and that under appropriate circumstances a court of equity may apply equitable principles to compensate a party for attorney's fees in litigation incurred by parties who initiated suits which resulted in a benefit to a group or class of people. *International Improvement Fund v. Greenough,* 105 U.S. 527, 26 L.Ed. 1157 (1882); *Central Railroad & Banking, Co. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885); *Sprague v. Ticonic National Bank,* 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); *Mills v. Electric Autolite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). See generally 7A Wright & Miller, Federal Practice and Procedure, § 1803 (1972);

Dawson, "Lawyers and Involuntary Clients: Attorney Fees from Funds," 87 Harv.L.Rev. 1597 (1974).

 The theory of recovery is based on the equity "common fund" theory that a common fund produced as a result of one party's efforts should be utilized as a source to compensate the attorneys for the party who played a role in obtaining the benefit for others. However, a bankruptcy court is prohibited from awarding fees to a trustee based upon the common fund doctrine and the court's general equity powers because such action could not be exercised within the confines of the Bankruptcy Code, which makes provisions for the allowance of counsel fees to trustees in certain instances and by implication denies counsel fees in all other instances. See *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206–07, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169, 179 (1988) ("The short answer to these arguments is that whatever equitable powers remain in the bankruptcy courts [they] must and can only be exercised within the confines of the Bankruptcy Code"). The fees and allowances of trustees in bankruptcy and their counsel are allowable only as authorized by the Bankruptcy Code. *Brandt & Brandt Printers, Inc. v. Klein (In re Friedman d/b/a Faultless Press),* 232 F.2d 151 (2nd Cir. 1956); *Guerin v. Weil, Gotshal & Manges,* 205 F.2d 302 (2nd Cir.1952); *Lane v. Haytian Corp.,* 117 F.2d 216 (2nd Cir.1940) cert. den. 313 U.S. 580, 61 S.Ct. 1101, 85 L.Ed. 1537 (1941). In *Brandt & Brandt Printers v. Klein,* the trustee had established that a creditor of the bankrupt partnership was a solvent silent partner who was liable to the partnership creditors in full after the partnership business was settled. 232 F.2d at 152. However, the trustee in bankruptcy was denied compensation from the funds which were turned over to the solvent partner, for distribution to the partnership creditors, notwithstanding that the trustee had created the fund which would benefit the other creditors.

The Bankruptcy Code specifically provides for compensation to a trustee in bankruptcy and to counsel employed by the trustee out of funds in the estate in accordance with 11 U.S.C. §§ 327 and 330. Additionally, a trustee may recover from property securing an allowed secured claim in accordance with 11 U.S.C. § 506(c) which provides:

(c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

 The key factor in applying 11 U.S.C. § 506(c) is that the expenses incurred by the trustee which may be charged to property securing an allowed secured claim, absent consent from the secured claimant, must have been "incurred primarily for the benefit of a creditor holding a security interest in the property." *General Electric Credit Corporation v. Levin & Weintraub (In re Flagstaff Foodservice Corp.,* 739 F.2d 73 at 76 (2d Cir.1984). Accord *Matter of Trim X, Inc.,* 695 F.2d 296 (7th Cir.1983); *In re Codesco, Inc.,* 18 B.R. 225 (Bankr.S.D.N.Y.1982).

In the instant case, the trustee acted primarily for the bankruptcy estate and the unsecured creditors in objecting to the debtor's discharge and in seeking a determination as to the priority of the claims asserted against the estate. The trustee did not pursue the fund held in escrow by the Bank to spare Nazario the expense of litigation. The fund was created when the various lien creditors obtained an order in the Pennsylvania Court of Common Pleas for the sale of the inventory and machinery owned by the debtor, with their liens to attach to the proceeds. The trustee in bankruptcy was duty bound to determine the priority of the claims filed against the proceeds from the sale after he successfully recovered funds from the escrowee. Similarly, the trustee had a duty to object to the debtor's discharge when the debtor failed to turn over books and records reflecting the debtor's financial affairs. The incidental benefit derived by Nazario as a result of the trustee's efforts does not justify charging Nazario's secured funds with the trustee's counsel fees and expenses.

Indeed, the trustee's primary objective was to step into Nazario's shoes in order to defeat the secured claims of other creditors for the purpose of establishing that the escrow fund should be distributed to the creditors holding unsecured claims, all to Nazario's economic detriment. In these circumstances, Nazario may not be compelled to finance the trustee's counsel fees for legal services which were intended to defeat Nazario's interest in the attached fund.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject and the parties pursuant to 28 U.S.C. § 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(H).

2. The trustee in bankruptcy may not employ 11 U.S.C. § 506(c) to charge Nazario's secured claim, without its consent, for counsel fees and expenses incurred by the trustee for litigation involving the denial of the debtor's discharge and the priority of claims against the funds attached by Nazario under its conditional lien, which Nazario later perfected so as to relate back to the date of attachment.

3. Nazario's motion for a turnover of the attached funds is granted and the trustee's cross-motion under 11 U.S.C. § 506(c) is denied.

Settle order on notice.