**In re BOERNE HILLS LEASING CORPORATION, Debtor.**

**Bankruptcy No. 88–53897–RBK.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

June 27, 1990.

Dean William Greer, Waitz, Greer & Cennamo, San Antonio, for debtor, Boerne Hills Leasing Corp.

E. Gayle Cipriano, Bankston, Wright & Greenhill, Austin, for Boerne Independent School Dist.

Michael Reed, McCreary, Veselka, Beck & Allen, P.C., Austin, for Kendall County.

Mark Stanton Smith, Law Office of John R. Heard, San Antonio, for City of Boerne.

Robert J. Rosenbach, James A. Hoffman, Clemens, Spencer, Welmaker & Finck, San Antonio, for Chrysler Credit Corp.

## OPINION

RONALD B. KING, Bankruptcy Judge.

The City of Boerne, Kendall County and Boerne Independent School District (the "taxing jurisdictions") have asserted secured claims to the proceeds of the sale of automobile inventory by virtue of alleged ad valorem tax liens on the business personal property of Boerne Hills Leasing Corporation (the "Debtor"). The central issues are whether the taxing jurisdictions' ad valorem tax liens attached to the Debtor's business personal property, and if so, whether the liens were perfected and transferred to the proceeds of the sale of the automobile inventory. For the reasons stated in this Opinion, the secured claims of the taxing jurisdictions to the proceeds of the sale will be denied.

On December 6, 1988, the Debtor filed this case under Chapter 11 of the Bankruptcy Code.[1] Chrysler Credit Corporation ("CCC") had previously provided floor plan financing of the Debtor's automobile inventory and had perfected its security interest by the filing of UCC–1 financing statements. Pursuant to this Court's Order, on August 4, 1989, the Debtor was authorized to sell substantially all of its assets free and clear of liens. The liens on the property sold were transferred to the proceeds of sale by the terms of the Order and notice was given to creditors that the net proceeds of sale would be distributed to CCC,

---

1. 11 U.S.C. § 101 *et seq.* (1988) (referred to herein as the "Bankruptcy Code"). The case was converted to Chapter 7 several months after the hearing on the taxing jurisdictions' claims.

subject to an objection period. By the terms of the Order, CCC was paid the entire net proceeds of sale because its lien was perfected and its debt exceeded the amount of the net sale proceeds.

The taxing jurisdictions subsequently filed claims to the proceeds because their unpaid taxes assessed on the personalty were not paid from the sale proceeds. The City of Boerne filed its "Objection to Distribution of Sale Proceeds." Kendall County and Boerne Independent School District followed suit and both filed a separate "Notice of Lien Claim to Proceeds of Sale and Request for Distribution." The taxing jurisdictions alleged that the Debtor owed ad valorem taxes assessed for 1988 and 1989 on equipment, fixtures and automobile inventory, and that a tax lien attached to all business personal property of the Debtor for 1988 and 1989 taxes pursuant to section 32.01 of the Texas Property Tax Code. The taxing jurisdictions claimed that these liens transferred to the net proceeds of the sale of the Debtor's business personal property.

CCC responded by claiming that the taxing jurisdictions had no valid liens on the inventory of automobiles because the tax liens were unperfected and thus unenforceable against a bona fide purchaser for value. CCC claimed that the Debtor has the strong arm powers of a trustee under sections 544, 545 and 1107(a) of the Bankruptcy Code, and that, therefore, the unperfected personal property tax liens were avoidable by the Debtor.

The taxing jurisdictions' response to the unperfected lien defense was that even though the Debtor would have the right, through an adversary proceeding, to avoid the taxing jurisdictions' unperfected liens, under section 551 of the Bankruptcy Code, the liens would be preserved for the benefit of the Debtor's estate. The taxing jurisdictions argue that it is unnecessary to go through the formality of the filing of an adversary proceeding to avoid the liens as unperfected, with the Debtor succeeding to the rights of the taxing jurisdictions to the personal property tax liens. CCC responded that the liens, even if avoided and pre-

served by the Debtor, would still be inferior to the CCC lien. In addition, CCC claimed that the proof failed as to what property to which the liens attached since most of the inventory on hand on January 1 was gone by the time the sale occurred in August, 1989. Each of the tax years, 1988 and 1989, present different issues and will be discussed separately.

I. 1988 taxes.

▇ It is undisputed that property tax liens attached to the business personal property of the Debtor on January 1, 1988, pursuant to Tex.Prop.Tax Code Ann. § 32.01 (Vernon Supp.1990). *Cf. In re Stanford*, 826 F.2d 353, 355 (5th Cir.1987) (prepetition real estate tax lien). Unlike real estate tax liens, however, a property tax lien on personal property is not automatically perfected as against a bona fide purchaser for value, but can be enforced only by seizure and sale of the personal property. Pursuant to section 32.03 of the Texas Property Tax Code, the tax lien may not be enforced against personal property transferred to a bona fide purchaser for value without actual notice of the existence of the lien.

▇ If the liens were not perfected, pursuant to section 1107(a), the debtor in possession can avoid unperfected liens by utilizing the trustee's strong arm powers found in section 545(2) of the Bankruptcy Code. *Georgia Pac. Corp. v. Sigma Serv. Corp.*, 712 F.2d 962, 966, n. 1 (5th Cir.1983); *In re Storage Technology Corp.*, 45 B.R. 363, 365 (D.Colo.1985). Section 545(2) provides, in part:

> The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
>
> . . . .
>
> (2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property, whether or not such a purchaser exists. . . .

11 U.S.C. § 545(2) (1988). The avoidance power of section 545 is subject to the limitations imposed by section 546 of the Bankruptcy Code. Section 546 allows perfection

of an interest in property by notice if non-bankruptcy law requires seizure of the property or commencement of an action and if the notice is given within the time fixed by nonbankruptcy law for such seizure or commencement. In this instance, the Debtor's business personal property was subject to ad valorem tax liens for 1988 at the time of the filing of this case on December 6, 1988. The liens were unperfected, however, at the time of filing, and there was no statutory safe harbor period in which to perfect, as in the case of a mechanic's lien or personal property purchase money security interest under the Uniform Commercial Code. At the moment of the filing of the Chapter 11 case, therefore, the Debtor had the right to file an avoidance action to set aside the unperfected tax liens on its business personal property. *In re Cummins*, 656 F.2d 1262, 1265–1266 (9th Cir.1981) (case under Bankruptcy Act); *Aikens v. City of Philadelphia (In re Aikens)*, 94 B.R. 869, 873, 876 (Bankr.E.D.Pa.), *aff'd*, 100 B.R. 729, 733 (E.D.Pa.), *aff'd sub nom. McLean v. City of Philadelphia (In re McLean)*, 891 F.2d 474 (3rd Cir.1989); *Quigley v. General Electric Co. (In re Electric City, Inc.)*, 43 B.R. 336, 343–344 (Bankr.W.D.Wash.1984). Assuming that the Debtor were successful in the avoidance action, however, the liens would not simply disappear. Section 551 of the Bankruptcy Code specifically preserves liens avoided by the trustee for the benefit of the estate. *Robinson v. Howard Bank (In re Kors, Inc.)*, 819 F.2d 19, 23 (2d Cir.1987); *C. & C. Co. v. Seattle—First Nat'l Bank (In re Coal–X, Ltd., "76")*, 103 B.R. 276, 280 (D.Utah 1986), *aff'd in part and rev'd in part*, 881 F.2d 865 (10th Cir. 1989).

Assuming that the Debtor in this case went through the exercise of avoiding the taxing jurisdictions' unperfected tax liens on personal property, and that the liens were then preserved for the benefit of the estate, this would still not benefit the taxing jurisdictions or the other creditors. The preservation of a lien which has been avoided pursuant to avoidance powers cannot improve the lien under state law against competing lienholders such as CCC.

As stated in *In re DeLancey*, 94 B.R. 311, 313 (Bankr.S.D.N.Y.1988):

> [T]he trustee who avoids and then preserves a senior secured claim cannot acquire greater rights in the property in question than those to which the trustee succeeded.

(Citing *Connelly v. Marine Midland Bank, N.A.*, 61 B.R. 748, 750 (W.D.N.Y. 1986) and *In re Appalachian Energy Indus.*, 25 B.R. 515, 517 (Bankr.M.D.Tenn. 1982)). *See also Egyptian Supply Co. v. Boyd (In re Graves)*, 117 F.2d 608, 611 (6th Cir.1941); *In re Tri–Sonic, Inc.*, 1 B.R. 138, 142 (Bankr.N.D.Tex.1979) (Bankruptcy Act cases). These cases clearly stand for the proposition that once the lien is avoided by the trustee, the trustee is subrogated to the lien and preserves the lien for the benefit of the estate rather than creating a windfall for junior lienholders. At the same time, however, the trustee does not acquire greater rights than those originally held by the unperfected lienholder, and if the unperfected lien is inferior under state law to those of other lienholders, the trustee's preserved lien is inferior to the liens of the other lienholders.

That is precisely the situation in this case. Here, assuming that the Debtor filed an avoidance action to avoid the taxing jurisdictions' unperfected tax liens on personal property, the liens which would be preserved would be inferior to the validly perfected security interest of CCC. Therefore, the exercise of requiring the filing of an adversary proceeding, avoiding the liens, preserving the liens for the Debtor's estate and then determining the lien priorities between the preserved liens and the CCC lien is unnecessary because the CCC lien was a perfected lien which was superior under state law to the unperfected liens of the taxing jurisdictions. If the avoidance action were not filed, CCC still has a superior lien because the taxing jurisdictions' liens were unperfected. Therefore, the taxing jurisdictions have no claim to the proceeds of the sale of the Debtor's personal property by virtue of the 1988 tax liens.

II. 1989 taxes.

■ The taxing jurisdictions also asserted that they have ad valorem tax liens on the Debtor's business personal property which attached on January 1, 1989, pursuant to section 32.01 of the Texas Property Tax Code. The taxing jurisdictions claimed that the 1989 tax liens also attached to the proceeds held by CCC from the sale of the Debtor's business personal property. On the other hand, CCC argued that section 362 of the Bankruptcy Code prevents the creation of a postpetition tax lien on the Debtor's business personal property. The taxing jurisdictions responded that while the automatic stay prohibits acts to create, perfect or enforce liens against property of the estate, section 362(b)(3) contains an exception which allows the perfection of a lien postpetition which supports a prepetition interest. *Maryland Nat'l Bank v. Mayor & City Council of Baltimore,* 723 F.2d 1138 (4th Cir.1983).

Section 362 of the Bankruptcy Code provides, in part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title ... operates as a stay, applicable to all entities of—

. . . .

(4) any act to create, perfect, or enforce any lien against the property of the estate....

While section 362(a)(4) prohibits the creation, perfection or enforcement or a lien against the property of the estate, section 362(b)(3) provides the following exceptions:

(b) The filing of a petition under section 302, 302 or 303 of this title ... does not operate as a stay—

. . . .

(3) Under subsection (a) of this section, of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title ... or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title....

The taxing jurisdictions' argument fails because under section 32.01 of the Texas Property Tax Code, there was no prior existing interest in the Debtor's business personal property before their liens purported to attach on January 1, 1989. As of January 1, 1989, the Debtor was in a Chapter 11 case and the automatic stay prohibited the creation, perfection or enforcement of liens against the estate. While there is no doubt that section 362(b)(3) excepts the "perfection" of certain liens, it is clear that creation, as opposed to perfection, is not excepted. *Equibank, N.A. v. Wheeling— Pittsburgh Steel Corp.,* 884 F.2d 80, 85–86 (3d Cir.1989); *In re Parr Meadows Racing Ass'n,* 880 F.2d 1540, 1545 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990); *In re Trowbridge,* 74 B.R. 484, 485 (Bankr.E.D.Pa.1987); *Perpetual Am. Bank, FSB v. District of Columbia (In re Carlisle Court, Inc.),* 36 B.R. 209, 214 (Bankr.D.D.C.1983); *In re New England Carpet Co.,* 26 B.R. 934, 939 (Bankr.D.Vt.1983).

The taxing jurisdictions asserted that an interpretation of the automatic stay to prohibit the creation of postpetition tax liens would hinder governmental entities from collecting funds necessary for their continuing operations and from receiving compensation for services that may benefit the debtor or the debtor's estate. *Maryland Nat'l Bank,* 723 F.2d at 1145. The automatic stay, however, applies to *all* creditors and is intended to promote the goal of equitable distribution of the debtor's estate. If the Bankruptcy Court lacked the power to prohibit the creation of new postpetition liens by governmental entities, such liens would "pull out chunks of an estate from the reorganization court and * * * [would] seriously impair the power of the court to administer the estate." *In re Parr Meadows Racing Ass'n,* 880 F.2d 1540, 1545 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990) (quoting *Gardner v. New Jersey,* 329 U.S. 565, 577, 67 S.Ct. 467, 473, 91 L.Ed. 504 (1947)). *Contra Maryland Nat'l Bank,* 723 F.2d at 1145. Although this Court is sympathetic to the concerns raised in the *Maryland National Bank* case by

the Fourth Circuit, the *Parr Meadows* and *Wheeling—Pittsburgh* cases appear to represent the more recent and better reasoned authority.

In this case, the taxing jurisdictions' purported 1989 tax liens were not created prior to the filing of the Chapter 11 petition, and, therefore, the liens for ad valorem taxes which would have ordinarily arisen on January 1, 1989, are not excepted from the automatic stay. Although the 1989 tax claims may be administrative expenses, the automatic stay prohibited new tax liens from attaching to the business personal property of the Debtor after the time of the filing of the Chapter 11 case on December 6, 1988.

III. Conclusion.

Based upon the above analysis, the objections of the taxing jurisdictions to the distribution of the funds must be overruled. This Opinion shall constitute the findings of fact and conclusions of law of the Court pursuant to Bankruptcy Rule 7052. A separate Order will be rendered disposing of the objection of each of the taxing jurisdictions.