### In re UNITED CONSTRUCTION AND DEVELOPMENT COMPANY, Debtor.

### In re BRIAN HEAD HOTEL CORPORATION, Debtor.

**FIRST AMERICAN SAVINGS BANK, FSB, Greensboro, North Carolina, and FDIC, as Receiver for American Federal Savings & Loan Association, Anderson, Indiana, Trustees, Plaintiffs,**

v.

**IRON COUNTY, a political subdivision of the State of Utah, Dee G. Cowan, Gene E. Roundy, and James C. Robinson, in their official capacity as the Iron County Board of County Commissioners, Dennis Ayers, in his official capacity as the Iron County Assessor, and Merna Mitchell in her official capacity as Iron County Treasurer, Defendants.**

**Bankruptcy Nos. 85C–03657, 85C–03656. Adv. No. 90PC–0744.**

United States Bankruptcy Court, D. Utah.

Jan. 7, 1992.

Mark O. Morris, Brent D. Wride, Ray, Quinney & Nebeker, Salt Lake City, Utah, for plaintiffs.

Kent L. Christiansen, Mueller & Christiansen, Salt Lake City, Utah, for defendants.

Mary Ellen Sloan, Deputy County Atty., Salt Lake City, Utah, amicus curiae.

Kenneth A. Rushton, Lehi, Utah.

## MEMORANDUM OPINION AND ORDER

GLEN E. CLARK, Chief Judge.

This matter is presently before the court on a Motion for Summary Judgment filed by the plaintiffs, First American Savings

Bank, F.S.B., Greensboro, North Carolina, and the F.D.I.C., as Receiver for American Federal Savings & Loan Association, Anderson, Indiana, Trustees (hereafter collectively referred to as the "Financial Institutions"). A hearing was held on May 30, 1991. Mark O. Morris, Esq., and Brent D. Wride, Esq., appeared on behalf of the plaintiffs. Kent L. Christiansen, Esq., appeared on behalf of the defendants, Iron County, a political subdivision of the State of Utah, Dee G. Cowan, Gene E. Roundy, and James C. Robinson, in their official capacity as the Iron County Board of County Commissioners, Dennis Ayers, in his official capacity as the Iron County Assessor, and Merna Mitchell, in her official capacity as Iron County Treasurer (hereafter collectively referred to as "Iron County" or "County"). Upon application to and approval of the court, Mary Ellen Sloan, Esq., Deputy Salt Lake County Attorney, filed a memorandum and made an appearance as amicus curiae. Counsel presented argument, after which the court took the matter under advisement. The court has carefully considered and reviewed the arguments of counsel and memoranda submitted by the parties and has made an independent review of the pertinent authorities. Now being fully advised, the court renders this decision.

## ISSUE

The issue before the court is whether or not the filing of a petition under the Bankruptcy Code stays, pursuant to 11 U.S.C. § 362, the postpetition creation and perfection of tax liens under Utah law for real property taxes assessed postpetition.

## STATEMENT OF UNDISPUTED FACTS

It appears that the following material facts are not disputed by the parties.

1. United Construction and Development Co. (hereafter "Debtor") filed a petition for relief under Chapter 11 of the Bankruptcy Code on November 1, 1985. Included among the property of the estate was real property known as the Brian Head Hotel (hereafter "Hotel"), located in the town of Brian Head, Iron County, Utah.

2. The case was subsequently converted to one under Chapter 7; and on or about August 11, 1987, the Chapter 7 trustee sold the Hotel under 11 U.S.C. § 363, as authorized by order of this court. By operation of 11 U.S.C. § 363, all liens on the Hotel became liens on the sale proceeds, which proceeds now constitute property of the estate.

3. Plaintiffs are trustees for themselves and seven other financial institutions who allege to be secured creditors claiming a first priority lien position on the sale proceeds by virtue of a trust deed recorded on October 7, 1983.

4. Iron County claims to have a lien position on the sale proceeds superior to that of the plaintiffs by virtue of Utah state law. This claim is based upon ad valorem property taxes assessed on the Hotel for tax years 1984, 1985, 1986, and 1987.

5. On or about May 12, 1990, this court entered an order holding that Iron County's 1984 and 1985 tax liens had priority over all other liens and encumbrances on the sale proceeds. Apparently, the tax claims for 1984 and 1985 have been paid by the trustee.

6. In 1986, for purposes of the 1986 property taxes, the County assessed the Hotel's value; and on or about October 22, 1986, the County mailed an assessment notice for the 1986 taxes.

7. In 1987, for purposes of the 1987 property taxes, the County assessed the Hotel's value; and on or about October 28, 1987, the County mailed an assessment notice for the 1987 taxes.

8. Plaintiffs' present motion for summary judgment concerns the County's lien claim for the 1986 and 1987 taxes, assessed postpetition.[1]

---

1. It appears that the Hotel was sold prior to the notice for the 1987 taxes being sent and the taxes becoming due. Because a tax lien under

Utah law relates back to and attaches on the first day of January of each year, *see infra,* this court's opinion includes the 1987 taxes.

## DISCUSSION

■ 11 U.S.C. § 362(a)(4) provides that the filing of a petition for relief under the Bankruptcy Code "operates as a stay, applicable to all entities, of ... (4) any act to create, perfect, or enforce any lien against property of the estate."[2] Plaintiffs are correct in noting that the term "entities" includes governmental units such as Iron County. *See* 11 U.S.C. § 101(14) (pre–1990 amendment renumbering provision to subsection (15)).

An exception to the stay is found in 11 U.S.C. § 362(b)(3), which provides that the filing of a petition for relief under the Bankruptcy Code "does not operate as a stay ... (3) ... of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title...." In turn, 11 U.S.C. § 546(b) provides in part: "The rights and powers of a trustee under sections 544 [trustee (as lien creditor or as successor to creditors and purchasers) avoiding transfer of property of or obligation incurred by the debtor], 545 [trustee avoiding the fixing of statutory lien on property of the debtor], and 549 [trustee avoiding transfer of property of the estate] of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection."

■ In effect, then, the issue before the court turns on whether Iron County had a preperfected, yet perfectible and lienable, interest in the Hotel for the 1986 and 1987 taxes that under generally applicable law could be perfected and made effective against an entity acquiring rights in the property prior to perfection. Based on a review of the pertinent law, this court believes that the County did not have such an interest in the Hotel and that the debtor's filing of bankruptcy stayed the creation

and perfection of tax liens on property of the estate for postpetition tax assessments. The County's interest was anticipatory at best.

The court must first turn to Utah law to determine what interest the County had in the Hotel for future-assessed taxes prior to any assessment of those taxes and prior to perfection of a tax lien for those future-assessed taxes.

Utah Code Ann. § 59–5–4 (§ 59–2–303, 1987 Property Tax Act), provides that by May 15 of each year, the county assessor must ascertain all property in the county subject to taxation and assess the property to the person owning, claiming, possessing, or controlling the property on January 1 of that year. Utah Code Ann. § 59–5–17 (§ 59–2–309, 1987 Property Tax Act) allows for property that has escaped assessment to be assessed at any time as far back as five years prior to the time of discovery of the escaped assessment. *See Union Portland Cement Co. v. Morgan County*, 64 Utah 335, 230 P. 1020 (1924); *Ririe v. Randolph*, 51 Utah 274, 169 P. 941 (1917). Once the assessment steps are completed, the property tax is computed by the county auditor pursuant to the levies established. Utah Code Ann. §§ 59–5–4 to 59–5–18, 59–5–30 to 59–5–36, 59–8–1 to 59–8–10 (§§ 59–2–301 to 59–2–329, 1987 Property Tax Act). Thereafter, the county auditor transmits the charge of taxes to the county treasurer, who mails the original tax notice. Utah Code Ann. § 59–10–10 (§ 59–2–1309, 1987 Property Tax Act).

■ Utah law provides further that every tax has the effect of a judgment against the person, and every lien created has the force and effect of an execution duly levied against all personal property of the delinquent. Utah Code Ann. § 59–10–1 (§ 59–2–1301, 1987 Property Tax Act); *Dillman v. Foster*, 656 P.2d 974 (Utah 1982) (dicta in *San Juan* implying that

---

**2.** As did the parties, the court refers to 11 U.S.C. § 362(a)(4) as the applicable stay provision. The court notes the existence of 11 U.S.C. § 362(a)(5), which applies to the attempted postpetition creation, perfection, or enforcement of a lien against property of the debtor for a claim

that arose prepetition. Inasmuch as the taxes presently in issue were assessed postpetition for postpetition taxes, subsection (a)(4), rather than (a)(5), appears to be the applicable stay provision.

§ 59–10–1 creates no personal obligation of any kind is clearly contrary to the plain language of § 59–10–1 and is disavowed) (*disavowing San Juan County v. Jen, Inc.*, 16 Utah 2d 394, 401 P.2d 952 (1965)); *Hayes v. Gibbs*, 110 Utah 54, 169 P.2d 781 (1946) (Wolfe, J., concurring). The judgment is not satisfied nor the lien removed until the taxes are paid or the property is sold for the payment of taxes. Every tax on real property is a lien against the property assessed. The lien attaches as of the first day in January of each year. Utah Code Ann. § 59–10–3 (§ 59–2–1303, 1987 Property Tax Act). *See Anson v. Ellison*, 104 Utah 576, 140 P.2d 653 (1943). The lien for taxes on real property is superior to pre-existing consensual liens on the property. *Union Cent. Life Ins. Co. v. Black*, 67 Utah 268, 247 P. 486 (1926).

■ Real property taxes unpaid on November 30 of each year following the date of levy are delinquent. Utah Code Ann. § 59–10–26 (§ 59–2–1325, 1987 Property Tax Act). And on the 15th day of January, property subject to a lien for taxes which are then delinquent for the preceding year shall be deemed to have been sold to the county at a preliminary sale to pay the taxes, penalty, and costs for which property is liable. Utah Code Ann. § 59–10–33 (§ 59–2–1332, 1987 Property Tax Act). While the property is held by the county under a preliminary sale, the property is not deemed sold for taxes subsequently assessed. Rather, the deemed sale for subsequently assessed taxes is postponed until the time for redemption under the previous preliminary sale expires. Thus, once property is sold at a preliminary sale, the property continues to be assessed in the same manner as if not sold. Utah Code Ann. § 59–10–41 (§ 59–2–1340, 1987 Property Tax Act).

■ Under Utah Code Ann. § 59–10–56 (§ 59–2–1355, 1987 Property Tax Act), real property taken over by the county for delinquent taxes may be redeemed by any person having an interest at any time while the property is held by the county under the preliminary tax sale prior to the lapse of four years from the date of the preliminary sale. Redemption is accomplished when the person pays the amount due the county, all taxes subsequently assessed, and all interest, penalty, and costs. For purposes of computing the amount required for redemption and making distribution, the interest, penalty, and delinquent tax for the last year included in the delinquent account at the time of payment are to be paid first. Payments are next made for the next to the last year's delinquent taxes, and so on until the full amount of the delinquent tax, penalty, and interest on the unpaid balances are paid.

■ Notwithstanding the statutory provisions set forth above, the court has not been directed to any law in Utah that provides the County with an advance pre-perfected interest in real property for taxes to be assessed in the future, which is perfectible, lienable, and effective against one acquiring rights in the property prior to the actual assessment and perfection. Salt Lake County argues that both the preliminary tax sale resulting from the initial tax delinquency and the distribution of payments upon redemption, i.e., first payment directed to the most recent delinquency, raise the County's interest in real property to a level that creates a perfectible interest for taxes not yet delinquent or even assessed. The court is not persuaded by and can find nothing in Utah law to effectively support Salt Lake County's position. Although property is deemed preliminarily sold to the County as a result of delinquent taxes, the court notes that for purposes of subsequently assessed taxes, § 59–10–41 specifies that the property is not deemed sold at the tax sale. Indeed, it appears that under Utah law, property continues to be assessed and taxes become delinquent in the usual course as if the property had not been deemed preliminarily sold. Although the County may have an interest in the property as a result of the preliminary sale, that interest appears limited. Also, although it appears that under § 59–10–56 delinquent taxes are paid off in reverse order upon redemption, that section deals with taxes assessed and accrued and simply establishes the County's interest in

those delinquent taxes at the time of redemption. Further, the court does not view an initial delinquency established prepetition, which results in a deemed preliminary sale of the property and the lien for which remains on the property until subsequent delinquencies are paid off, as a means of effectively creating or establishing a cognizable interest in the property for taxes to be assessed in future years that is sufficient to perfect against one acquiring rights in the property prior to those future years, for purposes of the narrow realm of the exception set forth in § 546(b).

■ The court reaches the conclusion that the filing of a petition stays the postpetition creation, perfection, and enforcement of tax liens, aware of the Supreme Court decisions of *California State Board of Equalization v. Sierra Summit, Inc.*, 490 U.S. 844, 109 S.Ct. 2228, 104 L.Ed.2d 910 (1989) (*citing Otte v. United States*, 419 U.S. 43, 95 S.Ct. 247, 42 L.Ed.2d 212 (1974); *Swarts v. Hammer*, 194 U.S. 441, 24 S.Ct. 695, 48 L.Ed. 1060 (1904)), and *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). In *Sierra Summit* the Supreme Court upheld the imposition of a state sales or use tax on a bankruptcy liquidation sale. The Court stated that 28

U.S.C. § 960 [3] evinces Congress' intention that a state be permitted to tax a bankruptcy estate notwithstanding any intergovernmental tax immunity objection that might be interposed. The Court apparently did not find any statutory preclusion to the imposition of the state tax.[4] In *Ron Pair* the Court held that the natural reading of 11 U.S.C. § 506(b) entitles the holder of an oversecured nonconsensual claim (such as an oversecured tax lien) to postpetition interest. At least, according to the Court, nothing precluded that entitlement.

■ In both *Sierra Summit* and *Ron Pair*, the Supreme Court looked to the plain language of the pertinent statutes and relied on their natural reading in its determination. As in those cases, the plain language of the pertinent statutes in this case, expressed by Congress in § 362(a)(4) and § 101(14), mandates the result: That the creation, perfection, or enforcement of a tax lien against property of the estate is stayed.[5] The possible exception to that preclusion, specified in § 362(b)(3) and § 546(b), including legislative history which specifically refers to postpetition acts of perfection that relate back in time to a date prior to the filing of bankruptcy, does not provide otherwise.[6]

**3.** 28 U.S.C. § 960 provides: "Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State, and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation."

**4.** The Supreme Court's discussion and decision in *Sierra Summit* that state taxes imposed on property of the estate or on business operations of a trustee do not violate principles of intergovernmental tax immunity do not answer the question presented in this case. Although the County appears able to assess nondiscriminatory taxes against property of the estate, the pertinent provisions of the Bankruptcy Code, as discussed herein, make it clear that the County cannot postpetition create, perfect, or enforce tax liens.

**5.** In *Sierra Summit*, 490 U.S. at 851–52, 109 S.Ct. at 2233–34 (*quoting Rockford Life Ins. Co. v. Illinois Dep't of Revenue*, 482 U.S. 182, 191, 107 S.Ct. 2312, 2317, 96 L.Ed.2d 152 (1987)), the Supreme Court stated that "[a] court must proceed carefully when asked to recognize an exemption from state taxation that Congress has

not clearly expressed." Indeed, the Court found that "[n]othing in the plain language of the statute, its legislative history, or the structure of the Bankruptcy Code indicate[d] that Congress intended to exclude taxes on the liquidation process from those taxes the States may impose on the bankrupt estate." *Id.* 490 U.S. at 853, 109 S.Ct. at 2235. The exclusion in this case, on the other hand, has been clearly expressed.

**6.** The court notes that the parties have not raised the issue of sovereign immunity, that is, whether or not the County, as a political subdivision of the state of Utah, qualifies under the umbrella of state immunity under the 11th amendment, and if so, whether Congress has clearly abrogated that immunity—pursuant to its authority under the Supremacy Clause—by way of § 362(a)(4), § 101(14), and/or § 106. Based on this court's reading of the plain language of these statutory provisions, this court believes that the County is not excepted from the stay under § 362 or proceedings related to the enforcement or application of the stay. *See Hoffman v. Connecticut Dep't of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989).

The court is aware of the situation, as presented in this proceeding, that real property taxes may be assessable against the estate but not collectible through a secured interest in the property from which the taxes arise.[7] As Salt Lake County points out, during the course of the administration of the estate, 28 U.S.C. § 960 subjects an officer or agent conducting any business under authority of a United States court "to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation." *See also California Board of Equalization v. Sierra Summit,* 490 U.S. 844, 109 S.Ct. 2228, 104 L.Ed.2d 910 (1989); *Nicholas v. United States,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966); *In re Preble Corp.,* 15 F.Supp. 775 (D.Me.1936); 11 U.S.C. § 346. Taxes incurred by the estate during the administration of the case may thus be an administrative expense. *See, e.g.,* 11 U.S.C. §§ 503, 505, 507.

The court's concern that real property taxes may be assessed against the estate is somewhat diluted by the fact that while property remains in the estate during the pendency of a case, the estate has the benefit of the automatic stay and the inclusion of the property in the estate. Additionally, trustees or debtors in possession may opt to abandon property in view of, *inter alia,* potential postpetition tax liabilities. Or tax liens may be avoided under such provisions as § 544, § 545, and § 549 and preserved for the benefit of the estate with respect to property of the estate, pursuant to § 551.[8]

Further, the court notes that under 11 U.S.C. § 506(c), a trustee may "recover from property securing an allowed secured claim the reasonable, necessary cost and expense of preserving, or disposing of, such property to the extent of any benefit to the holder of such a claim." *See also In re AFCO Enterprises, Inc.,* 35 B.R. 512 (Bankr.D.Utah 1983); *Equibank v. Wheeling–Pittsburgh Steel,* 884 F.2d 80, 86–87 (3d Cir.1989); *American Savings & Loan Ass'n v. Gill (In re North County Place, Ltd.),* 92 B.R. 437 (Bankr.C.D.Cal.1988); *Hospitality Ltd. v. Fidelity Savings & Loan Co. (In re Hospitality Ltd.),* 86 B.R. 59 (Bankr.W.D.Pa.1988); *In re Sherrill,* 78 B.R. 804 (Bankr.W.D.Tex.1987). The court expresses no opinion as to whether, upon the trustee's request under § 506(c) for payment, the postpetition assessed taxes in this case are a reasonable, necessary expense of preserving or disposing of the Hotel and whether payment of the real

---

7. The court notes that the filing of a petition under the Bankruptcy Code operates as a stay of, *inter alia,* "*any act* to obtain possession of property of the estate or or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3) (emphasis added), and of "*any act* to create, perfect, or enforce any lien against property of the estate," 11 U.S.C. § 362(a)(4) (emphasis added). *See also Job v. Calder (In re Calder),* 907 F.2d 953 (10th Cir. 1990) (any action taken in violation of stay is void and without effect, although equitable principles may be applicable to claimed violations of stay); *Ellis v. Consolidated Diesel Electric Corp.,* 894 F.2d 371 (10th Cir.1990). Under Utah law it appears that real property taxes automatically become liens on the property after assessment and levy, computation of the tax, and the original tax notice is mailed. Inasmuch as section 362 stays any act to create or perfect a lien, one may argue that not only the actual postpetition statutory creation of a lien but also the preliminary acts of assessing, computing, and noticing the property taxes are stayed. *But see California State Board of Equalization v. Sierra Summit, Inc.,* 490 U.S. 844, 109 S.Ct. 2228, 104 L.Ed.2d 910 (1989); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); 11 U.S.C. §§ 362(b), 503. It appears that under applicable law the assessment or establishment of property tax pursuant to state law, as distinguished from the actual creation and perfection of a lien for the tax, is not precluded.

Additionally, the court expresses no opinion as to whether or not the County may utilize the escaped assessment provision when property tax is precluded from becoming a lien on the property, and whether or when postpetition taxes could become liens on the property—possibly automatically—once the subject property is no longer property of the estate. *See* 11 U.S.C. § 362(c)(1) ("the stay of an act against property of the estate ... continues until such property is no longer property of the estate").

8. The court simply raises options potentially available. The court has not had benefit of argument on these matters inasmuch as the trustee is not a party to this proceeding and therefore has not addressed or briefed the court in regard to these matters.

property taxes would benefit the holders of allowed secured claims on the Hotel.

The court's determination that the automatic stay precludes the creation, perfection, and enforcement of statutory tax liens for postpetition assessed taxes [9] is aligned with the majority of courts addressing or referencing this issue. *See, e.g., Equibank v. Wheeling–Pittsburgh Steel Corp.*, 884 F.2d 80 (3d Cir.1989); *Lincoln Savings Bank v. Suffolk County Treasurer (In re Parr Meadows Racing Ass'n)*, 880 F.2d 1540 (2d Cir.1989); *Makoroff v. City of Lockport (In re Guterl Special Steel Corp.)*, 111 B.R. 107 (W.D.Pa.1990), *aff'd* 916 F.2d 890 (3d Cir.1990); *Erie Hilton Joint Venture v. Prudential Insurance Co. (In re Erie Hilton Joint Venture)*, 125 B.R. 140 (Bankr.W.D.Pa.1991); *Watervliet Paper Co. v. City of Watervliet (In re Shoreham Paper Co.)*, 117 B.R. 274 (Bankr.W.D.Mich.1990); *In re Boerne Hills Leasing Corp.*, 117 B.R. 264 (Bankr. W.D.Tex.1990); *Pointer v. City of Farmers Branch (In re Pointer)*, 113 B.R. 285 (Bankr.N.D.Tex.1990); *Gline v. Horn & Co. (In re Isley)*, 104 B.R. 673 (Bankr. D.N.J.1989); *Aikens v. City of Philadelphia (In re Aikens)*, 94 B.R. 869 (Bankr. E.D.Pa.1989), *aff'd* 100 B.R. 729 (E.D.Pa. 1989), *aff'd* 891 F.2d 474 (3d Cir.1989); *In re Bellman Farms, Inc.*, 86 B.R. 1016 (Bankr.D.S.D.1988).

Iron County has cited specifically to four cases in support of its position that the postpetition liening of property for taxes is excepted from the automatic stay. Foremost among those cases is *Maryland Nat'l Bank v. Mayor and City Council of Baltimore (In re Maryland Glass Corp.)*, 723 F.2d 1138 (4th Cir.1983). At first blush, the discussion in *Maryland Nat'l Bank* concerning the state's ever-present interest in real property is persuasive. However, for the reasons previously stated, including a review of Utah law, this court declines to follow *Maryland Nat'l Bank.*

Another case cited by Iron County, *Stanford v. Butler (In re Stanford)*, 826 F.2d 353 (5th Cir.1987), is inapposite. *Stanford* simply decides that prepetition unrecorded statutory tax liens, effective under state law notwithstanding that the tax liens were unrecorded, retain their lien status despite the filing of bankruptcy. Similarly, *Pearlstein v. United States Small Business Admin.*, 719 F.2d 1169 (D.C.Cir.1983), is not helpful. *Pearlstein* simply decides that, pursuant to District of Columbia law applied as the federal standard for determining relative priorities of a federal lien and a District of Columbia lien, a perfected lien for unpaid sales taxes had priority over an earlier perfected SBA lien. Both liens appear to have been perfected prior to the filing of bankruptcy; and, in any event, the validity or effectiveness of the liens was not addressed or even in issue. Indeed, nothing in *Pearlstein* addresses or even refers to the issue of whether a tax lien may be created or perfected postpetition. The final case specifically relied on by Iron County to support its contention that the rationale in *Maryland Nat'l Bank* is the majority position is *Artus v. Alaska Dep't of Labor (In re Anchorage Int'l Inn, Inc.)*, 718 F.2d 1446 (9th Cir.1983). That case, too, does not address the issues presented in the instant action. *Artus*, a Bankruptcy Act case, provides for the application of a state law requiring that all liquor-related claims of creditors be paid or adequately provided for prior to the transfer of a liquor license, despite the filing of bankruptcy. The court determined that such a state law did not conflict with the federal bankruptcy distribution scheme. In the present case, however, there is a clear statutory mandate in § 362(a)(4), disallowing the creation, perfection, and enforcement of any lien, including those of governmental units. The court has not been shown any provision allowing for the creation or perfection of tax liens under Utah law for taxes assessed postpetition to come within the narrow exception of § 362(b)(3) and § 546(b).

---

**9.** The court notes that if a taxing entity were allowed pursuant to state law to create and perfect tax liens after the filing of a petition under the Bankruptcy Code for postpetition tax assessments, states could enact or enforce non- discriminatory legislation providing for tax liens to encumber all property of the taxpayer, possibly resulting in the liening of all property of the estate during the pendency of bankruptcy.

Accordingly, IT IS HEREBY ORDERED that plaintiffs' Motion for Summary Judgment is granted. The debtor's filing of a petition under the Bankruptcy Code stayed the postpetition creation, perfection, and enforcement of the tax liens for the 1986 and 1987 real property taxes.